MICHAEL MORITZ

*v.*

FRANCIS A. HOFFMAN *et al.*

1. VOLUNTARY CONVEYANCE — *when evidence of fraud.* A voluntary conveyance to wife or child, when the grantor is largely indebted, is presumptive evidence of fraud, and a fraudulent intent will be presumed from the fact of indebtedness at the time.

2. SAME — *modifications thereof.* If the creditor, however, retains sufficient property wherewith to discharge his debts existing at the time of the conveyance, such presumption is avoided.

3. SAME — *consideration what.* The want of a valuable consideration may be a badge of fraud, but it is only presumptive, not conclusive evidence of it.

4. SAME — *as to subsequent creditors.* A settlement upon a wife by a voluntary conveyance without consideration, the grantor being solvent at the time, and made without any fraudulent intent, cannot be attacked by a subsequent creditor, and is only void against creditors existing at the time of the conveyance, if the grantor was insolvent at the time of its execution.

5. SAME — *how impeached.* To impeach such a conveyance successfully, it lies upon the complainant to aver and prove that he was a creditor at the time, and

554      Moritz *v.* Hoffman *et al.*      [April T.,

Statement of the case.      Opinion of the Court.

that the grantor was then insolvent, or such facts and circumstances as would authorize a court or jury to presume insolvency.

6. Same. If such conveyance was made in anticipation of becoming indebted and for the purpose of defrauding creditors, and was made without consideration, it matters not whether the grantor was insolvent or not, the conveyance would be void against such subsequent creditors.

7. Same. In cases of voluntary conveyance to wife or child, it is not required the grantor should be insolvent to render the deed fraudulent, it is sufficient to show he was deeply indebted.

8. Same. The doctrine is, that a settlement merely voluntary, cannot be impeached unless it be fraudulent and covinous — mere indebtedness at the time is not sufficient, if the maker of the settlement retained sufficient property with which to discharge his debts.

Appeal from the Circuit Court of Du Page county, Hon. I. G. Wilson, Circuit Judge.

This was a bill in chancery in the Circuit Court of Du Page county, by Michael Moritz against Francis A. Hoffman and wife and Alexander Siller and wife, to subject certain real estate to the payment of a judgment obtained by Moritz against Francis A. Hoffman.

The court decided against the complainant, Moritz, and he has brought the case here by appeal.

The facts of the case are sufficiently stated in the opinion of the court. The errors assigned are also specified in the opinion.

Messrs. Garrison & Blanchard, for the appellant.

Messrs. McAllister, Jewett & Jackson, for the appellees.

Mr. Justice Breese delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Circuit Court of Du Page county, by appellant against appellees.

The case was heard on the bill, answers, replication and depositions, at the November Term, 1863, and a decree entered against the complainant, dissolving the injunction and dismissing his bill, at his costs. From this decree he brings this appeal to this court, and assigns the following errors:

The decree should have been in favor of complainant and his bill of complaint ought not to have been dismissed.

The court erred in not granting the relief prayed, at least a part thereof.

The court erred in not decreeing two conveyances to Theodore Hoffman, mentioned and set forth in said bill of complaint, fraudulent and void, as against the judgment and execution of appellant, he being a creditor at the time the same was made, and also the conveyance to Bertha Siller.

The court erred in not decreeing said execution and judgment were a lien upon all the lands levied upon, especially the land sought to be conveyed to Theodore Hoffman.

Erred in not decreeing the lands deeded by F. A. Hoffman and wife to Siller's wife, was subject to said judgment and execution, and especially in not decreeing the house and barn put thereon by Siller, was subject to said execution.

The complainant was entitled to some relief in the premises and the court granted none.

The bill seeks to subject certain real estate, alleged to have been conveyed by defendant, in fraud of his creditors, the complainant being one, by virtue of a judgment recovered by him in the Superior Court of Chicago, to the payment of this judgment, on which he alleges an execution to Cook county had been returned " no property found," and another, which issued to Du Page county, returned levied on the lands described in the levy, and which are the lands alleged to have been fraudulently conveyed.

The appellant makes several points, all of which we have considered. The first and most important is, that complainant being a creditor of appellees, at the time F. A. Hoffman made the voluntary deed to Theodore Hoffman, in trust for his wife, and such deed being clearly a gift, its only consideration expressed being love for his wife Cynthia, is *per se* fraudulent and void as against appellant's judgment, and *fi fa.* thereon.

No one will dispute the principle appellant seeks to establish, that a voluntary conveyance, when the grantor is indebted at the time of its execution, is presumptive evidence of fraud;

and a fraudulent intent will be presumed, from the fact that the party conveying was indebted at the time the conveyance was executed, and that as to preëxisting creditors, every conveyance not made on a consideration valuable in law, is void. The principle is thus broadly stated, but it is subject to some qualification; to this extent, at least, that the debtor retains in his possession property sufficient to discharge all debts existing at the time of making the conveyance alleged to be fraudulent. If this was not permitted, trade of every description would be very much crippled, and instead of there being an active interchange of property, the whole business of the country would stagnate. No creditor, without a lien, has any right to complain that his debtor is giving away property to his wife or children, unless such creditor can establish the fact that he has not retained enough to satisfy existing debts. Such grantor must make himself insolvent by such gifts or conveyances, and to impeach them, fraud must be charged and proved. In *Van Wyck* v. *Seward et al.*, 6 Paige Ch. 62, it was held, when a parent makes an advancement to his child and honestly and fairly retains in his hands sufficient property to pay all his debts, such child is not bound to refund the advancement for the benefit of creditors, although it should afterward happen that the parent does not pay his debts which existed at the time of making such advancement.

And the chancellor, in that case, further said, that the mere fact of an existing indebtedness does not render a voluntary conveyance absolutely fraudulent or void in law as against the creditors whose debts were previously contracted, if there was no intention on the part of the grantor to delay or defraud his creditors.

On appeal to the court of errors this doctrine was affirmed, and we believe the books are full of such cases. An objection to this doctrine we have never seen seriously urged by any court. In the case of *Hindes, Lessee*, v. *Longworth*, 11 Wheat. 213, it was said, that a deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors. It may be so under certain circumstances,

but the mere fact of being in debt to a small amount would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and that the gift to the child was a reasonable provision, according to his state and condition in life, and leaving enough for the payment of the debts of the grantor. The want of a valuable consideration may be a badge of fraud, but it is only presumptive, not conclusive evidence of it, and may be met and rebutted by evidence on the other side.

That this is sound and salutary doctrine, when applied to transactions between a parent and child, why should it be unsound and unsafe, when applied to transactions between a husband and his wife, through the intervention of a trustee? The obligation resting upon the husband to secure a home for his wife, is quite as strong as a provision for a child, and to perform it is equally praiseworthy, but the estate secured to the wife, must be in proportion to her state and condition in life, and the husband must leave enough for the payment of his debts.

In looking into the proofs in this cause, we find that at the time appellee, F. A. Hoffman, conveyed this thirty acres of land to Theodore Hoffman, in trust for his wife, he was in very prosperous circumstances, wholly unembarrassed, and had means sufficient at that time to discharge all the then existing liabilities against him, and that the provision made for his wife was such as her state and condition in life warranted. Hoffman was then a banker, doing a large business in Chicago, receiving and paying out deposits daily and every hour in the day. Appellant was one of his customers and depositors, whose checks were promptly honored, until the disastrous financial occurrences of the spring of 1861. Appellant began to deposit with appellees soon after they commenced business in 1855. When the settlement was made on Mrs. Hoffman, the deposit amount of appellant showed a balance in his favor of about twelve hundred dollars. This account was constantly fluctuating by daily drafts made on it by appellant, and sums were paid in to replenish, so that at one period his credits amounted to but eight hundred dollars, and

his check book, in evidence, shows that the whole amount for which appellant obtained his judgment, was deposited by him since April, 1860. It cannot, therefore, be averred that the appellees were his debtors at the time of the settlement, for the check book shows that amount was adjusted and changed by deposits and checks subsequently made.

The testimony shows that from that time to the day of the failure of the concern, it was in a flourishing condition, out of which large profits were made and the confidence of the public liberally extended to it. We do not think appellant, under these circumstances, could be regarded in the light of a subsisting creditor prior to the settlement, as his account became merged in the large amount for which he brought his suit, and he must, therefore, be treated as a subsequent creditor. *Reed* v. *Woodman,* 4 Maine, 400.

Being then a subsequent creditor, the settlement, though by a voluntary conveyance without consideration, the grantors being solvent at the time, and made without any fraudulent intent, it is not liable to attack by such creditors, and it is only void against creditors existing at the time of the conveyance, if the grantor was insolvent at the time. *Howe* v. *Ward,* id. 195.

To impeach such a conveyance successfully, it lies upon the complainant to aver and prove that he was a creditor at the time, and that the grantor was then insolvent, or such facts and circumstances as would authorize a court or jury to presume insolvency, none of which have been established in this case.

But if the conveyance was made without consideration, whether the grantor was insolvent or not, it would be void against subsequent creditors, if such conveyance was made in anticipation of becoming indebted, and for the purpose of defrauding creditors of their just and lawful actions. Id. 208.

This doctrine of voluntary settlements on wives by their husbands, and on children by their parents, has been long established in England, to whose courts we must resort for much of the learning belonging to it. Many of the cases are

referred to by the learned judge who delivered the opinion in the case of *Howe* v. *Ward*, and it is interesting and instructive to read them.

In *Walker* v. *Burrows*, 1 Atk. 94, Lord HARDWICKE said, that to impeach such a conveyance it was necessary to prove that the person making the conveyance was indebted at the time of making the settlement, or immediately after the execution of the deed. In *Stileman* v. *Ashdown*, 2 id. 481, it was held that a settlement upon children, even though made by a person not indebted at the time, might be void as against subsequent creditors, if anything in the transaction afforded ground for an inference that the provision was made with a view to becoming indebted.

We see, in this case, no fact justifying the inference that this provision was made by F. A. Hoffman for his wife with a view to his becoming indebted, no further than the act of any person in extensive business, whose balances are daily changing sides on his ledger, is subject to such an inference. If this was not so, no man in active business could safely transfer property for the praiseworthy object of providing a home for his wife or child. Such are the fluctuations in the financial and commercial world, and they will always occur with such a people as ours, the credit side of an honest man's ledger may show to-day thousands in his favor, and the next day the sad intelligence may come to him over the wires that the failure of a trusted correspondent, with whom he had large deposits, has beggared him. While his ledger told him a tale so pleasing, while he was buoyant on the wave of prosperity, he secures a home for his wife or for his child, by conveying to a trustee for their use a portion of his estate, voluntarily, and with no other consideration except love and affection. No case can be found in the books where such a settlement, under such circumstances, though the grantor afterwards became indebted, has been impeached and set aside. In the case of *Lord Townsend* v. *Wyndham*, 2 Vesey, Sr. 10, Lord HARDWICKE said: "If there is a voluntary conveyance of real estate or chattel interest by one not indebted at the time, though he afterwards becomes indebted, and that

voluntary conveyance is for a child, and without any particular badge or evidence of fraud, to defraud subsequent creditors, that will be good; but if any mark of collusion or fraud, or intent to deceive subsequent creditors, appears, that will make it void; otherwise not, though afterwards he becomes indebted.

In *Lush* v. *Wilkinson*, 4 Vesey, Jr. 384, the master of the rolls said: "You appear as a subsequent creditor, and desire an account in order to invalidate this settlement by proving prior debts. I have great doubt whether you have a right to come without proving one antecedent debt. In *Stephens* v. *Olive*, Lord Kenyon seems to think, that without an antecedent debt proved there is no such right. A single debt will not do. Every man must be indebted for the common bills of his house. though he pays them every week. It must depend upon this whether he was in insolvent circumstances at the time."

In the case of *Shears and Shears* v. *Rogers, ex'r*, 23 Eng. C. L. R. 96, all the judges concurred in holding that to make a voluntary deed fraudulent, within the statute of 13 Eliz., the party making it must be in insolvent circumstances. This is the English doctrine. Some courts in this country have held that subsequent creditors might impeach a settlement on the ground of prior indebtedness, if they could show antecedent debts sufficient in amount to afford reasonable evidence of a fraudulent intent; they are not obliged to show the absolute insolvency of the person making the settlement. It is enough to show him deeply indebted. *Reade* v. *Livingston*, 3 Johns. Ch. 501; *Parkman* v. *Welch*, 19 Pick. 231; *Jones* v. *Slubey*, 5 Har. & Johns. 372; *Hadnal* v. *Wilder*, 4 McCord, 294. This would seem to be the most reasonable doctrine, and tested by this, there is nothing in this case to show the person making the settlement was deeply indebted. The current of authority is, that mere indebtedness at the time, will not, *per se*, establish that a voluntary conveyance was void, even as to existing creditors, unless the other circumstances of the case justly create a presumption of fraud, actual or constructive, from the condition, state and rank of the parties, and the direct tendency of the conveyance to impair the rights of creditors. We think it

may be safely stated that a settlement, merely voluntary, cannot be impeached, unless it be fraudulent and covinous; that mere indebtedness at the time is not sufficient, if the maker of the settlement retains sufficient property with which to discharge his debts.

We have dwelt at some length on this point to the exclusion of others, for the reason that it is the principal and most important point in appellant's case, and has been argued on both sides with great ability. As to the subordinate points, they are more or less involved in the consideration of the leading one. As to the fact that appellees owed sundry depositors at the time of this conveyance in 1858, it is in proof they were paid before the failure of appellees, and that the amounts respectively due them, at the date of the failure, had been deposited long subsequent to the conveyance. This rebuts the idea of fraud by reason of appellees owing debts at that time. If they were paid, there could be no fraud as to them, in making the deed.

As to Mrs. Siller, the property conveyed to her was small in amount, about ten acres, on which different witnesses place different values. The consideration is expressed to be five hundred dollars earned by Mrs. Siller by the care she had for some years bestowed upon the children of F. A. Hoffman. It was not worth more, in the opinion of some of the witnesses, than one thousand dollars, and a homestead of that value is secured to her by law. As it is not proved appellee was indebted at the time this conveyance was made, and as it was for a valuable consideration, it cannot be assailed:

As to the fact that appellees expended money on this property after the conveyance, in embellishing it and fitting it up for a residence as a respectable farm house, it is justified by the fact that they had a right thus to expend their money, so that it was not done with a view to divert that money from the claims of creditors. No extravagant appropriations were made by either of the appellees. As to the suggestion that F. A. Hoffman was a poor man from 1844 to 1852, it is not a fair inference in this growing country that he remained so up to

36—35th Ill.

1858, especially as he did an extensive business in a locality where, in that time, fortunes were acquired by very many who entered that field of enterprise with talents to plan and with energy to carry out great business operations. The allegation in the bill that appellees were heavily indebted, or under heavy liabilities at the time of the conveyance, is not sustained by any proof in the cause. The bookkeeper of appellees, who was examined as a witness, could have proved it, doubtless, if the fact was so, but he was not interrogated on the point. That was an important item as conducing to the proof of fraud.

As to the omission of the court to decree the sale of the supposed life estate of appellees, F. A. Hoffman and Siller, in these lands, it may be answered, the bill does not ask it, and if it had so prayed, the court might with great propriety have said to the complainant, you have averred in your bill of complaint that you have an execution levied on these lands, why do you not pursue your remedy at law?

We can see no ground in this case for the imputation of fraud, and deem the conveyances to Theodore Hoffman, in trust for Mrs. Hoffman (and they are the only deeds of which exhibits have been made), as good and valid in law, and accordingly affirm the decree of the court below in dissolving the injunction and dismissing the bill.

*Decree affirmed.*