# MATTHEW FALOON

## *v.*

# R. S. McINTYRE *et al.*

*Filed at Springfield October 6, 1886.*

1. PARENT AND CHILD—*as to their mutual support—presumption as to the existence of any contract for compensation—evidence in respect thereto.* Where a child lives with a parent, or a parent with the child, the relationship between them is so intimate that the law does not imply a contract to pay money for support or services, and unless there is an express contract to pay for the same, a recovery therefor can not be had by one against the other.

2. In the absence of an express agreement to pay for support or services, as between parent and child, the law will presume that what the one may do for the other is done gratuitously, and as the prompting of natural affection.

3. So where a father and mother reside in the family of their son-in-law for several years, without any express contract to pay for their support, and the facts and circumstances fail to show that any compensation was intended or expected to be given or received, but rather indicate that no charges were to be made on either side, the son-in-law will have no right to recover any sum for the support of his wife's parents.

4. In this case, an aged father made his home with his married daughter for about sixteen years, during which time there was no accounting or reckoning between him and his son-in-law, a physician, and the latter made no charge for medical services, nor any claim for board, or necessaries or supplies furnished, but, on the contrary, gave his notes to the father-in-law, at

different times, for considerable sums, and continued to make payments thereon, and the father-in-law conveyed to him property worth $6000 for $2500: *Held,* that these facts negatived the idea of any contract of the father to pay for his support.

5. FRAUDULENT CONVEYANCE—*voluntary provision for wife or children.* A man has a right to make a voluntary conveyance of land to a trustee, for the benefit of his wife and children, provided he does not do so in fraud of the rights of existing creditors. The mere fact of indebtedness, alone, will not invalidate such conveyance. It must further appear that the grantor was insolvent at the time of making such provision.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding.

Mr. THOMAS F. TIPTON, for the plaintiff in error:

The conveyance to McIntyre had a direct tendency to impair the rights of plaintiff in error in regard to his claim. It conveyed all the property Mr. Fell owned, and when this conveyance was made, he was, in fact, insolvent. That it was void, see *Patrick* v. *Patrick,* 77 Ill. 561; *Moritz* v. *Hoffman,* 35 id. 554; *Sweeney* v. *Damron,* 47 id. 450; *Gridley* v. *Watson,* 53 id. 186; *McLaurie* v. *Partlow,* id. 340.

I concede the general doctrine that a voluntary conveyance is void only as to prior creditors, and not as to subsequent creditors, as held in *Palmer* v. *Yeazle,* 88 Ill. 597, *Moritz* v. *Hoffman,* 35 id. 553, *Bridgeford* v. *Riddel,* 55 id. 261, *Mixell* v. *Lutz,* 34 id. 382, *Ward* v. *Enders,* 29 id. 519, and *Woolbridge* v. *Gage,* 68 id. 159.

But even this rule must be considered subject to exceptions and limitations,—that while this doctrine, that only creditors having claims when the fraud is committed can avoid such conveyance, yet if it be shown that the deed was made in anticipation of incurring debts, to avoid the payment of which the conveyance was made, the rule is otherwise,—and this principle runs through all the cases. *Mixell* v. *Lutz,* 34 Ill.

382; *Moritz* v. *Hoffman,* 35 id. 553; *Gridley* v. *Watson,* 53 id. 186; *Woolbridge* v. *Gage,* 68 id. 157; *Griffin* v. *National Bank,* 74 id. 259; *Tunison* v. *Chamblin,* 88 id. 285; *Pratt* v. *Myers,* 56 id. 24.

McIntyre is a mere trustee, and holds the property under the deed. Having no interest, in fact, in the matter, he can not, in any sense, claim to be a *bona fide* holder, and the conveyance should be set aside. *Jones* v. *Ewing,* 86 Ill. 229; *Hoole* v. *Moore,* 17 Iowa, 197; Bump on Fraudulent Conveyances, 319.

Messrs. FIFER & PHILLIPS, for the defendants in error:

Where services are voluntarily rendered, or support furnished, by those near of kin, or by those sustaining near family relations, whether of blood kin or not, the law will imply no contract for compensation, and unless an express contract to pay is shown in such a case, no recovery can be had. *Hall* v. *Finch,* 29 Wis. 278; *Swires* v. *Parsons,* 5 W. & S. 357; *Duffy* v. *Duffy,* 44 Pa. St. 399; *Lantz* v. *Frey,* 2 Harr. 201; *Scully* v. *Scully's Exrs.* 28 Iowa, 548; *Coe* v. *Wager,* 42 Mich. 49; *St. Jude's Church* v. *Denberg,* 31 id. 287; *Fitch* v. *Peckham's Exrs.* 16 Vt. 150; *Insurance Co.* v. *Bloodgood,* 4 Wend. 652; *Defrance* v. *Austin,* 9 Barr, 309; *Meyer* v. *Malcom,* 20 Ill. 621; *Schwartz* v. *Schwartz,* 26 id. 81; *Mowbry* v. *Mowbry,* 64 id. 382; *Bond* v. *Lockwood,* 33 id. 212; *Meyers* v. *Temme,* 72 id. 574; *Brush* v. *Blanchard,* 18 id. 46; *Griffin* v. *National Bank,* 74 id. 259.

The fact that no charge was made or bill presented for the board of Fell and wife for twenty years, would rebut any legal presumption that might otherwise arise, of an agreement to pay. *Hall* v. *Finch,* 29 Wis. 278; *Eitel* v. *Walter,* 2 Bradf. 287; *Insurance Co.* v. *Bloodgood,* 4 Wend. 652.

A voluntary conveyance of real estate is not void as to subsequent creditors. *Durand* v. *Weightman,* 108 Ill. 489; *Woolbridge* v. *Gage,* 68 id. 157; *Bridgeford* v. *Riddel,* 55 id.

261; *Moritz* v. *Hoffman,* 35 id. 553; *Mixell* v. *Lutz,* 34 id. 382; *Ward* v. *Enders,* 29 id. 519; *Tunison* v. *Chamblin,* 88 id. 378; *Pratt* v. *Meyers,* 56 id. 23; *Jackson* v. *Miner,* 101 id. 550.

To render a voluntary conveyance void, even as to prior creditors, it must be affirmatively shown that the grantor was insolvent, or at least deeply indebted, at the time of making such conveyance. The rights of creditors must be shown to be impaired. *Gudgel* v. *Kitterman,* 108 Ill. 50; *Moritz* v. *Hoffman,* 35 id. 553; *Patrick* v. *Patrick,* 77 id. 555; *Bridgeford* v. *Riddel,* 55 id. 261; *Gridley* v. *Watson,* 53 id. 186; *Tunison* v. *Chamblin,* 88 id. 378; *Pratt* v. *Meyers,* 56 id. 23.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

On May 5, 1882, Joshua R. Fell and Sarah Fell his wife, as party of the first part, executed and delivered a deed of trust, conveying a certain lot in Bloomington, McLean county, Illinois, to Robert S. McIntyre, one of the defendants in error, as party of the second part, wherein it is recited, that the party of the first part thereto, "doth grant, bargain and sell to the party of the second part, his heirs and assigns forever, for the trusts and the uses intended, and purposes hereinafter limited and declared, all of that certain piece or parcel of land, with the appurtenances, situate in the county of McLean, and State of Illinois, described as follows, to-wit, (then describes the premises by metes and bounds,) in trust, to take possession of the same, and to have the complete control thereof, to rent the same for the best prices, to collect the rents, and out of the same, first to pay taxes and repairs, and the expenses of this trust, together with insurance, and to pay the balance of said rent to said Joshua R. Fell during his natural life, and then to the said Sarah Fell during her life, and after the death of said parties of the first part, and the survivor of them, sell and convey said real estate under the direction of

the court having cognizance of such matters, and invest the money realized from the sale, and under the same direction, and pay the interest of such income or investment, as follows: One-half of said interest or income, to Mrs. Ellen Faloon during her natural life, and the other half of said income in like manner to be paid to Mrs. Mary Conner during her natural life, with this reservation: that out of the one-half of said money, the life interest of which is to go to Mary Conner, Charles E. Fell is to be paid any sum that he has advanced, or may hereafter advance, out of the interest. After the death of Mrs. Ellen Faloon, one-half of the property purchased therewith shall be given to the children of Mrs. Faloon, if then living, and if not, then to her legal heirs in like manner, and the other half, at the death of Mrs. Mary Conner, shall be given to her children living, and if none are living, then to her legal heirs, subject, however, to the deductions above named; and the said second party covenants to fairly perform the duties above described." This conveyance was acknowledged and recorded on the day of its date. Ellen Faloon and Mary Conner were the daughters, and Charles E. Fell was the son, of Joshua R. Fell and wife, the grantors in the deed.   Ellen Faloon was the wife of Matthew Faloon, plaintiff in error.

Afterwards, on May 26, 1883, Joshua R. Fell executed a judgment note for $2500, dated May 26, 1883, and payable, one day after date, to the order of Matthew Faloon, with interest, after due, at eight per cent per annum.   On May 28, 1883, judgment was entered up, upon this note, in favor of plaintiff in error, and against Joshua R. Fell, in the circuit court of McLean county, for $2500 and costs, upon which execution was issued, and still remained in the hands of the sheriff, when the bill, hereinafter mentioned, was filed.

On July 10, 1883, plaintiff in error filed his bill in said circuit court, setting up the judgment and execution, and praying that the property, described in the deed of trust, be

subjected to the payment of such judgment. The bill charges, that the deed was without consideration, and that the indebtedness, upon which the judgment was rendered, accrued before May 5, 1882. Fell, McIntyre, the beneficiaries in the trust, and the tenants in possession, were made defendants. Upon answers filed and proofs taken, the cause went to hearing before the circuit judge, who dismissed the bill for want of equity. This decree, dismissing the bill, was brought before the Appellate Court of the Third District, by writ of error, issued therefrom, and was affirmed by that court. For the purpose of reviewing such judgment of affirmance, the cause is brought before us by writ of error to the Appellate Court.

Joshua R. Fell had a right to make the voluntary conveyance, herein set forth, for the benefit of his wife and children, provided he did not do so, in fraud of the rights of existing creditors. (*Moritz* v. *Hoffman et al.* 35 Ill. 553; *Sweeney et ux.* v. *Damron et al.* 47 id. 450; *Gridley* v. *Watson*, 53 id. 186; *Patrick* v. *Patrick*, 77 id. 555.) Unless he can be said to have been in debt to plaintiff in error, he owed no debts whatever. Hence, the main question to be considered is, whether, on May 5, 1882, when the voluntary conveyance was made, there was an existing indebtedness from Fell to plaintiff in error, for which the judgment note was afterwards given in May 1883.

Joshua R. Fell is more than eighty years old, and is very feeble, and almost blind. His wife is over seventy-five years of age. Plaintiff in error married their youngest daughter, about the year 1862. Shortly thereafter, they went to live with plaintiff in error and his wife, and continued to live with them, with the exception of a few brief periods of absence, for nearly twenty years. April 14, 1881, they moved into their own house, to live there with another daughter, Mrs. Conner. On that day, plaintiff in error, who is a physician by profession, made the following entry in one of his books of account:

"*J. R. Fell.—To self and wife:*

| | |
|---|---:|
| To boarding 16½ years (858 weeks) at $8 per week, for both - - - - - - - | $6864 |
| To medicine and treatment during last 18 years, etc., at $50 per year - - - - - - - - | 900 |
| | $7764 |
| By amount at sundry times - - - - | 300 |
| | $7464 |

It is, thus, claimed by plaintiff in error, that, on May 5, 1882, he was a creditor of Joshua R. Fell, to the amount of $7464, for board and medical attendance, furnished to Fell and his wife, during a period of sixteen and a half years, and that the indebtedness was compromised, between them, at $2500, on May 26, 1883, when the judgment note was given.

Where a child lives with the parent, or a parent with the child, the relationship between the parties is so intimate, that the law does not imply a contract to pay money for support or services. Unless it be shown, that there is an express contract to pay for such support and services, a recovery therefor can not be had by one of the parties against the other. In the absence of an express agreement, the law indulges the generous presumption, that what is done for each other by parties, thus nearly related, is done gratuitously, and as the prompting of natural affection. *Miller* v. *Miller*, 16 Ill. 296; *Brush* v. *Blanchard*, 18 id. 46.

In the case at bar, the proof does not show, that Mr. and Mrs. Fell made any contract to pay their daughter and her husband for giving them a home in their old age. On the contrary, the testimony, considered as a whole, conveys an entirely different impression. Dr. Faloon was much older than his wife, and she was but a mere girl, when she married him. She appears at that time to have been living with her parents, and to have been very reluctant to leave them alone. She says, in her evidence in this case, that an arrangement

was made, before she was married, that her father and mother were to come and live with her; that such was her own request; that the only objection her mother had to her marriage was her leaving home; that she was conscientious about leaving her parents alone in the country, and would not leave them for three weeks at a time; that nothing was said about the cost of keeping them, and that she and her husband offered them a home.

During the many years, prior to April 1881, while these parties were living together, there was never anything like an account or reckoning between them. Before the date of the book entry, above mentioned, plaintiff in error made no charge for medical services, nor any claim or demand for board, or necessaries, or supplies, furnished by him. This negatives the idea, that there was any contract, on the part of Fell, to pay Dr. Faloon for his support. (*Hall* v. *Finch, Admr.* 29 Wis. 278.) Moreover, during this period, plaintiff in error executed a note for $400 to his father-in-law, and, at one time, paid him $360 on that note. As late as November 1878, he executed a note for $1990 to Joshua R. Fell, securing its payment by a chattel mortgage on certain personal property; and it is in evidence, that he admitted his indebtedness to Fell to the amount of the $1990, so secured. If his father-in-law was owing him so much, as is here claimed, for board and support, why was not such indebtedness set off against the notes, here referred to? Why were such notes given at all to a man, who was already so largely his debtor? The house, in which plaintiff in error lives, was sold to him by his father-in-law for $2500, at a time, when, according to the testimony in the record, it was worth $6000. The difference of $3500 between the real value and the price paid can not be regarded otherwise than as a gift, and greatly exceeds the $2500, for which the account for board, support and medicine is claimed to have been compromised. We are of the opinion, that no such indebtedness existed on May 5,

1882, as to justify us in holding, that the deed of trust, executed by Fell to McIntyre on that day, was a fraud upon the rights of plaintiff in error.

It is, furthermore, to be observed, that, even if Fell had been the debtor of plaintiff in error, at the time when he made the voluntary conveyance, now under consideration, such indebtedness, of itself alone, would not operate to defeat the conveyance. It must be shown, that Fell was insolvent at that time. (*Moritz* v. *Hoffman et al. supra.*) His conveyance of a portion of his property, in trust for his wife and children, would not be void, if he was solvent, and retained, in his possession, property sufficient to discharge his existing debts. It is not alleged· in the bill, nor established by the evidence; that he was insolvent on May 5, 1882. On the contrary, the proof tends to show, that he had other means, besides the property, conveyed to McIntyre. He received $2500 from the plaintiff in error himself on the sale to him of a house and lot. He sold a farm to one Van Pelt for $4000. He was able to lend plaintiff in error $400, at one time, and $1990, at another. Plaintiff in error himself says, that, when he married Fell's daughter, Fell "was worth dollars, where I was worth pennies." What became of all the means here referred to? If they were not absorbed in the expenses of living, Fell was not an insolvent man.

In any view, that may be taken of the facts in this record, we can not see, that the circuit court erred in dismissing the bill of plaintiff in error. The judgment of the Appellate Court is, therefore, affirmed.

*Judgment affirmed.*