Nichols v. Wallace.

LOUIS NICHOLS AND MARY W. NICHOLS

v.

JOHN WALLACE.

SAME

v.

H. SEITER & Co.

*Fraudulent Conveyances—Secret Trust—Husband and Wife.*

1. While a married man, though in debt, but in prosperous circumstances, may, by voluntary conveyance, deed property to his wife for the purpose of creating a separate estate in her for her support and maintenance, to maintain such conveyance it must be made in good faith, and without design or intention on the part of the grantor to hinder or delay his creditors, and he must at the time of conveying, retain in his possession property sufficient to discharge all his debts then existing.

2. This court holds, in view of the evidence, that the conveyance in the case presented, was fraudulent.

[Opinion filed January 15, 1892.]

APPEAL from the Circuit Court of St. Clair County; the Hon. B. R. BURROUGHS, Judge, presiding.

Messrs. KOERNER & HORNER, for appellants.

Where there are no creditors whose rights may be put in jeopardy, it is competent for a husband to create a separate estate for his wife out of his own property, and no one can impeach the transaction or inquire into its propriety, unless he was a creditor of the husband at the time. Yazel v. Palmer, 81 Ill. 82.

It is competent for a party to create a separate estate for his wife out of his own property if there are no creditors of the husband at the time whose rights will be affected thereby, or even if there are creditors, if the husband retains a sufficient amount to satisfy their claims. Bridgford et al. v. Riddell et al., 55 Ill. 261; Moritz v. Hoffman et al., 35 Ill. 553.

No creditor without any lien has any right to complain that his debtor is giving away his property to his wife or children, unless such creditor can establish the fact that the debtor has not retained enough to satisfy existing debts.

Such grantor must make himself insolvent by such gifts or conveyances, and to impeach them fraud must be alleged and proved.

In the absence of an allegation in a creditor's bill to reach property given by a husband to his wife that he was insolvent at the time and that such gift rendered him unable to meet all his legal obligations, or even that he owed any other persons, and of proof to sustain the same, it can not be presumed that any other debts of the husband existed. Bittinger v. Kasten et al., 111 Ill. 260.

When existing creditors are not injured a husband may convey land to wife. Lincoln v. McLaughlin, 74 Ill. 11; Patrick v. Patrick, 77 Ill. 555.

Creditor's bill to set aside alleged fraudulent conveyance from debtor to his wife must contain averment that creditor was debtor's creditor at time of conveyance and that debtor was then insolvent, or it is fatally defective. Uhre v. Melum, 17 Ill. App. 182; Koster et al. v. Hiller, 4 Ill. App. 21.

Husband may convey to wife, if he does not impair claims of existing creditors. More v. Page, 111 U. S. 117.

Husband may act as agent for his wife. Cubberly v. Scott

et al., 98 Ill. 38; Bennett et al. v. Stout et al., 98 Ill. 47; Bongard v. Core, 82 Ill. 19.

Messrs. DILL & SCHAEFER, for appellees.

In Emerson v. Bemis, 69 Ill. 540, it is held that "a voluntary conveyance as against pre-existing creditors is fraudulent in law and void." In the same case it is held that a party will not be permitted to withdraw such an amount of his estate as will in any material degree injure his then creditors. These principles are quoted and approved in Bittinger v. Kasten, 111 Ill. 265.

A husband can not settle property on his wife in defiance of his creditors. Hockett v. Bailey, 86 Ill. 74.

Such a settlement by a party largely indebted and insolvent will be void even as to subsequent creditors. Morrill v. Kilner, 113 Ill. 318.

Existing creditors may avoid a conveyance for mere fraud in law. Lowentrout v. Campbell, 130 Ill. 503.

The law is (as it ought to be) that a person who is in debt will not be permitted to give away any portion of his property unless he can do so "without the least hazard to his creditors, or in any material degree lessening their then prospects of payment." 69 Ill. 541.

GREEN, P. J. This case was before us and the decree reversed at the February term, 1889. Another hearing was had in the court below, which resulted in a decree dismissing the bill of H. Seiter & Co., and further decreeing that the deed from Louis Nichols to his wife, Mary W. Nichols, be set aside, vacated and declared null and void and of no effect as against the judgment of John Wallace, the interest and costs thereon, and two-thirds of the costs in this proceeding. It was further ordered that John Wallace be authorized to have another execution issued upon his said judgment, and that thereupon the sheriff of said county levy upon, advertise and sell the lands in said deed described for the payment of said judgment, interest and costs.

To reverse this decree Louis Nichols and Mary W. Nichols

prosecute this appeal.   The bill of John Wallace in this record is an amended bill, and it is therein alleged that after making said fraudulent conveyance to his wife, said Louis Nichols *was insolvent and became so by making such conveyance.*   This was not alleged in the original bill.   A full statement of the pleadings and subject-matter in controversy appears in the former opinion, 31 Ill. App. 408, and a repetition thereof is unnecessary here.

It was said in that opinion :   "The bill does not charge that Nichols was insolvent at the time he made this conveyance to his wife," (this bill does so charge,) "but presents as grounds for setting aside deed, and granting the relief, that the wife holds the property in secret trust for the husband, and the conveyance was made to hinder and delay his creditors in the collection of their claims against him."   Following this statement in that opinion we say :   "A man in prosperous circumstances, although in debt, may, without consideration, and voluntarily, convey his property to his wife, for the sole purpose of creating a separate estate in her for her support and maintenance."   Authorities were cited supporting this proposition.

We also said, at the time Nichols conveyed to his wife he owned three other farms, and an interest in other real estate; that the said farms were then mortgaged, but we were satisfied *from the evidence* the property retained by Nichols at the time he conveyed to his wife, was worth, over and above all incumbrances, several thousand dollars, and was not only ample to satisfy all claims against him then existing, but greatly in excess of their aggregate amount.   The record now before us contains additional evidence affecting the question of the value of Nichols' equity of redemption in the mortgaged farms, and of his interest in other real estate, and also the question whether the deed was made in good faith to Mrs. Nichols for the purpose of creating a separate estate in her for her support and maintenance.

It now appears the three farms mentioned were sold to satisfy the debts secured by the mortgages thereon, and neither of said farms was redeemed from the sale.   This undisputed

fact, together with the testimony of complainant's witnesses on that question, justifies the conclusion that the equity of redemption was without value, and the witnesses who testified the lands mortgaged were worth much more than the mortgage debt, were mistaken. The court below was also justified by the evidence in finding that the value of the interest owned by Nichols in other real estate at the time he conveyed to his wife, was less than the amount of the debts he then owed. The only unincumbered property he then owned was the real estate he conveyed to his wife, consisting of 178 acres of land, which, according to the evidence, was worth at least $13,350, and his said interest in other real estate worth less than the debts he owed. It thus appears by the evidence in the present record, that by his deed to his wife he attempted to convey all of his unincumbered real estate, except his said interest in other real estate, and did not retain property sufficient to pay the then existing debt of appellee and debts he then owed other creditors. Upon the question of good faith, the testimony of Mrs. Nichols, not in the former record, is quite significant. She had testified she received the rents and profits of the land her husband conveyed to her; that her husband acted as her agent in collecting the rents; and was then asked, " He turned it over to you, did he?" And in answer testified, " Yes, sir, he did what he saw fit with the money." She also testified in answer to the question as to when her husband promised to convey the land to her, "We spoke of it before we were married frequently and it was only neglect we did not do it. It was in good faith always. Mr. Nichols has been the greatest enemy to himself. He had a great many friends in Lebanon who have known him from boyhood, and he would have paid everything, I am sure, if they had given him a show. But they only rushed at him in such a state and crowded him and I am very sorry to say they did so. I am very sorry to say if they were anything but friends, they would have allowed him time to straighten things around or given him sufficient time until they would have been paid, and he would have done it."

There was also evidence justifying the court in finding that

for several years after the date of the deed to Mrs. Nichols, her husband sold the rent grain as his own, and used the proceeds for himself. And Bormen, a witness, testified that he lived on that land as the tenant of Nichols for six years, and the latter collected the rent from him, and he was never informed of this conveyance until the fall of 1887, and then received the information from the two together, Nichols and his wife; that Nichols then said, from this time on his wife must have the rent; that he had turned it over to her.

There was proof sufficient in this record to support the findings and decree of the Circuit Court. While it is the law as before stated, that a man in debt, but in prosperous circumstances may, by voluntary conveyance, convey property to his wife for the purpose of creating a separate estate in her for her support and maintenance, yet to maintain such conveyance, it must be made in good faith, and for the purpose indicated. It must be made without design or intent on the part of the grantor to hinder or delay his creditors, and he must, at the time of conveying, retain in his possession property sufficient to discharge all his debts then existing. These requirements are imperative. Moritz v. Hoffman, 35 Ill. 553; Bridgford v. Riddell, 55 Ill. 261; Tunison v. Chamblin, 88 Ill. 379; Bittinger v. Kasten, 111 Ill. 260. The decree is affirmed.

*Decree affirmed.*