### William Ebers, Receiver, Appellee, v. William Rieck-enberg et al., Appellants.

1. CREDITORS' SUIT, § 56*—*when judgment for defendant proper under evidence.* The defendant in a creditor's bill is entitled to a decree, where the only evidence tending to show insolvency and the voluntary character of the conveyance was testimony by the complainant that he had a conversation with the defendant in which the latter declared he had no property and that he had deeded it to his sons in payment for services rendered, without showing the date of the conversation.

2. CREDITORS' SUIT, § 56*—*when insolvency at time of conveyance not shown.* The fact that a defendant in a creditor's bill was insolvent 2 years after a conveyance is not sufficient to show in-. solvency at the time of conveyance, where his testimony shows that he was solvent at that time.

3. CREDITORS' SUIT, § 56*—*what complainant must show.* A complainant in a creditor's bill must show that the conveyances in question rendered the defendant insolvent at that time, or that they were made to hinder and delay creditors.

4. CREDITORS' SUIT, § 56*—*when shown that debtor not insolvent.* Evidence reviewed and *held* to show the defendant in a creditor's bill not to have been insolvent at the time of the conveyance in question, or subsequently when the executions were returned by the sheriff at the suggestion of the complainant.

Appeal from the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded with directions. Opinion filed April 12, 1919. *Certiorari* denied by Supreme Court (making opinion final).

A. C. BOLLINGER and J. FRED GILSTER, for appellants.

H. CLAY HORNER, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellee, as receiver of the Farmers Bank of Steeleville, filed a creditor's bill in the Circuit Court of Randolph county against appellants, setting forth the recovery of certain judgments against appellant William Rieckenberg, aggregating $2,628.33; that executions were issued on said judgments and were returned by the sheriff, "no property found wherewith to satisfy the same"; that appellant, William Rieckenberg, widower, conveyed to his sons, appellants herein, 120 acres of land each, located in Randolph county, reserving to himself as grantor therein a life estate in said lands, said deeds being dated May 21, 1915.

It is further charged in said bill: "That no consideration was paid by the grantees of said deeds for their respective grants of land and said deeds were in fact made without consideration and as gifts by said grantor to his said sons respectively; that said deeds were intended to hinder and delay the said Farmers Bank and this receiver in the collection of said indebtedness; and that said deeds are void as to complainant to the extent of said unpaid indebtedness."

The prayer of said bill is that execution issue against said land and that in default of the payment of said judgments that said lands so conveyed to appellants, R. H. Rieckenberg and H. W. Rieckenberg, sons of appellant, William Rieckenberg, be sold to satisfy the same. An answer was filed by appellants herein denying the averments of said bill and denying that appellee was entitled to the relief prayed. Said cause was heard by the chancellor in open court, a finding was made for complainant and a decree entered finding the issues for appellee and decreeing that the conveyances made by appellant, William Rieckenberg, to his sons respectively, appellants herein, be set aside and vacated and to be for naught taken as against the said judgment of complainant herein, etc.

To reverse said decree this appeal is prosecuted.

The record discloses that appellee, as receiver, on December 12, 1916, recovered a judgment against appellant, William Rieckenberg, for $570.25 and on February 5, 1917, he recovered a judgment against appellant, William Rieckenberg, and C. E. Robinson for $852.05, and on February 5, 1917, he obtained a judgment against William Rieckenberg and Amos Rury for $494.83, and on the same day he obtained a judgment against William Rieckenberg and Fred Rednour for $273.45, and on February 12, 1917, he obtained a judgment against William Rieckenberg for $337.75; that said judgments were severally entered by confession and that each of the notes on which said judgments were obtained were valid and outstanding and owing by appellant, William Rieckenberg, on May 21, 1915, the date of the conveyance sought to be set aside. The record further discloses that the sheriff to whom the executions were issued on said judgments made the following return on each of said executions on the 20th day of February, 1917. ''Having this 20th day of February, 1917, made demand on William Rieckenberg for property to satisfy this judgment and the said William Rieckenberg having turned out none, having made search for property to satisfy the execution and being unable to find any property, at the suggestion of plaintiff's attorney made this 20th day of February, 1917, I return this execution no property found wherewith to satisfy the same. Signed, W. George Beever, Sheriff, by McGuire.''

To sustain the averments of his bill appellee offered in evidence the two deeds in question, one to each of the sons of William Rieckenberg, and the testimony of Charles J. Kribs, the circuit clerk of Randolph county and *ex-officio* recorder of said county, who testified to the effect that the records made by him as such recorder tended to show that his instructions were to return said deeds to William Rieckenberg.

The parties hereto stipulated that the several judgments above referred to were rendered as above set forth and that executions were issued thereon and a return made on each execution in the words above specified. In addition thereto, appellee testified, over the objection of appellants, that he had a conversation with William Rieckenberg and that in that conversation he said "he had no property," that "he had deeded it to his sons, Rudolph and William," and when asked "whether they had paid him any money for it," or the conversation brought out that matter, he said, "No, they had not paid him any money except what they had earned before they were of age, or up to the time he made the deeds, for the work they had done for him," that was his statement. This was the only testimony in the record offered by appellee tending to show that the conveyances in question made to the sons of William Rieckenberg were voluntary and that the said William Rieckenberg had no other property. There is nothing in the question asked or the answer made as above set forth to indicate when this conversation was had. When appellee rested his case, appellants moved the court for a finding and decree in their favor on the ground that the proof did not sustain the allegations of insolvency of appellant, William Rieckenberg, at the time of the making of the deeds; that the insolvency, if any was shown, was shown to have been on February 20, 1917, being the date of the return of the execution. In our judgment the motion should have been allowed, and the court erred in failing to allow the same. However, appellants offered evidence on the hearing after said motion was overruled, which said evidence tended to prove that on May 21, 1915, the date of the conveyance in question, appellant, William Rieckenberg, who was then engaged in the hardware and implement business, had on hand $2,433.65 in value of implements, stock food, etc., and that all that he owed on said stock of goods was $396.65, owing to the John Deere Company,

and that he had on hand book accounts aggregating $6,995.59. The specific articles making up the stock of goods and the value of the same and the names and amounts of the several accounts making up the aggregate above specified are set forth in the evidence. That he also owned a grain house worth about $600, and that he owned two houses, one worth about $1,000, and one worth about $950, located in Steeleville. That he had 30 acres of land unincumbered in addition to what he had conveyed to his sons, and that it was worth about $1,200, and in addition to this real estate he had retained a life estate in the 240 acres that he had conveyed to his two sons; that he at the time of making the conveyances in question was 65 years of age; and that the rental value of this land was about $3 per acre. On cross-examination it developed that in addition to owing the $396.65 to the John Deere Company he owed $1,100, and that some time after the conveyances to his sons he mortgaged the 30 acres in question to secure this $1,100. So far as the record discloses the indebtedness sought to be recovered in this proceeding, together with the claim owing to the John Deere Company and the $1,100, was all that appellee owed at the time of the conveyances in question.

It is contended by appellee's counsel that inasmuch as the record discloses that appellant, William Rieckenberg, was unsuccessful in business and was unable to pay his debts in February, 1917, that therefore the conclusion must be drawn that he was insolvent in May, 1915, when the conveyances were executed. Appellant, William Rieckenberg, on cross-examination testified that he had collected over $3,000 of the book accounts, and when he was asked as to what he did with the money he made answer that he paid the money on his indebtedness and that he had to live and that he had not been making any money, but there is nothing in the record to show that the indebtedness that he was paying was indebtedness that existed prior to May 21, 1915. Appellee takes the position that in-

asmuch as the record discloses that no definite money consideration was paid by appellant's two sons to their father, William Rieckenberg, for the conveyances in question, that these conveyances were therefore voluntary, and that, if voluntary, upon a return of execution unsatisfied, it makes out a prima facie case for appellee, while counsel for appellants insist that appellee is not only required to prove that the conveyances were voluntary but that at the time the conveyances were made appellant, William Rieckenberg, rendered himself insolvent by such conveyances.

The record discloses with reference to the consideration for these conveyances that appellant, William Rieckenberg, formerly lived on the land in question; that he desired to move to Steeleville and that he said to his sons that if they would stay on the farm and look after the farm for him he would pay them well for it. That his sons, the appellants, herein, did remain on the farm and did look after the farm for their father from 1908 until 1915, when the deeds were made, and that they had been paid nothing for their services up to that time. Without reference, however, to the question as to whether or not the conveyances to the appellants were voluntary, so far as they might affect the right of creditors, we are of the opinion that before appellee would be entitled to a decree setting aside these conveyances the evidence must show that at the time the conveyances were made the making of the conveyances rendered appellant, William Rieckenberg, insolvent, or the evidence in the record must show that the intention of appellant, William Rieckenberg, in the making of the conveyances, was to hinder and delay his creditors. We do not understand that appellee contends that there was any actual intention on the part of William Rieckenberg to hinder and delay his creditors, but only that the conveyance rendered him insolvent.

Where a complainant in a chancery proceeding seeks to reach the proceeds of a voluntary conveyance upon

the ground that it was fraudulent in law, as to the donor's creditors, there being no actual fraud, it is essential that the complainant aver and prove that the donor was insolvent at the time the conveyance was made. *Moritz v. Hoffman,* 35 Ill. 553; *Merrell v. Johnson,* 96 Ill. 224; *Bittinger v. Kasten,* 111 Ill. 260; *Faloon v. McIntyre,* 118 Ill. 292; *Dimond v. Rogers,* 203 Ill. 464; *State Bank of Clinton v. Barnett,* 250 Ill. 312.

In *Bittinger v. Kasten, supra,* the court at page 265, in quoting from *Moritz v. Hoffman,* 35 Ill. 553, says: "No creditor without a lien has any right to complain that his debtor is giving away property to his wife or children, unless such creditor can establish the fact that he has not retained enough to satisfy existing debts. Such grantor must make himself insolvent by such gifts or conveyances, and to impeach them, fraud must be charged and proved." Citing, *Van Wyck v. Seward,* 6 Paige (N. Y.) 62.

In *State Bank of Clinton v. Barnett,* 250 Ill. 312, the court at page 318 says: "Appellee having failed to prove fraud in fact, the burden of proof devolved upon it to show that Mrs. Barnett rendered herself insolvent by making this gift before it could establish presumptive or legal fraud. In passing upon this question in *Moritz v. Hoffman,* 35 Ill. 553, we said (p. 556): 'No one will dispute the principle appellant seeks to establish, that a voluntary conveyance, when the grantor is indebted at the time of its execution, is presumptive evidence of fraud; and a fraudulent intent will be presumed, from the fact that the party conveying was indebted at the time the conveyance was executed, and that as to pre-existing creditors, every conveyance not made on a consideration valuable in law is void. The principle is thus broadly stated, but it is subject to some qualification,—to this extent, at least, that the debtor retains in his possession property sufficient to discharge all debts existing at the time of making the conveyance alleged to be

fraudulent. If this was not permitted, trade of every description would be very much crippled, and instead of there being an active interchange of property, the whole business of the country would stagnate. No creditor, without a lien, has any right to complain that his debtor is giving away property to his wife or children, unless such creditor can establish the fact that he has not retained enough to satisfy existing debts. Such grantor must make himself insolvent by such gifts or conveyances, and to impeach them, fraud must be charged and proved.' And in the same case we also said (p. 558): 'To impeach such a conveyance successfully, it lies upon the complainant to aver and prove that he was a creditor at the time and that the grantor was then insolvent, or such facts and circumstances as would authorize a court or jury to presume insolvency, none of which have been established in this case.' This case was followed and approved in *Merrell v. Johnson*, 96 Ill. 224; *Bittinger v. Kasten*, 111 Ill. 260, and *Faloon v. McIntyre*, 118 Ill. 292. In the *Bittinger* case it was said: 'The owner of property may at any time give the same to any one he chooses, so long as he thereby injures no then existing creditor, * * * and the mere fact that he may be indebted is not alone sufficient to make a gift or voluntary conveyance by him inoperative'; and it was held that if the creditor failed to aver and prove insolvency of the debtor at the time the conveyance was made he was entitled to no relief. In passing upon the same question in *Dimond v. Rogers*, 203 Ill. 464, we said (p. 468): 'In order to obtain relief it was necessary to prove a transfer which, in fact or in law, was fraudulent as to creditors, or in case of a voluntary gift or conveyance to the husband, that the judgment debtor did not retain enough money or property to pay her debts.' "

In view of the law as laid down by the Supreme Court in the cases above cited, we are of the opinion that appellee not only failed to prove that at the time

the conveyances in question were sought to be set aside appellant, William Rieckenberg, rendered himself insolvent, but that so far as the record shows he was at the time solvent. We are also inclined to the opinion that the record discloses that at the time the executions were returned by the sheriff as herein set forth, appellant, William Rieckenberg, then had sufficient property to pay the judgments here sought to be collected.

The record discloses that appellant at the time these executions were served on him filed a schedule which discloses that appellant had book accounts aggregating $2,170; notes aggregating $500; the grain house heretofore mentioned; scales and a one-horse power engine. In addition thereto he had a life estate in the 240 acres in question.

Appellee at page 2 of his brief says: "At date of conveyances, he had personal property as follows:— A stock of implements and buggies and odds and ends, which he values at $2,037 net." It might be observed that this is the amount appellant, William Rieckenberg, claimed his stock of goods were worth after deducting the bill he owed to the John Deere Company. "He had book accounts aggregating $6,995.59, and an old shack called a grain house built in the 'seventies' on railroad right of way as a sort of warehouse."

While appellee concedes that the record discloses this amount of personal property, besides the real estate mentioned, he has not shown by the record and the record does not disclose that at the time of the conveyances sought to be set aside appellant, William Rieckenberg, was not solvent, and did not have sufficient funds with which to pay all of his indebtedness he was shown to be owing at that time.

For the reasons above set forth the judgment and decree of the trial court will be reversed and the cause will be remanded with directions to dismiss the bill filed herein for want of equity.

*Reversed and remanded with directions.*