**Bessie E. Kippen, Appellee, v. Robert J. Kippen, Appellant.**

**Gen. No. 40,574.**

Opinion filed June 28, 1939.

P. F. MURRAY, of Chicago, for appellant; JOHN T. MURRAY, of Chicago, of counsel.

JAMES W. BREEN, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendant for services rendered as governess, nurse and housekeeper for the three minor children of defendant. A jury returned a verdict finding the issues against defendant and assessing plaintiff's damages at the sum of $1,500. Defendant appeals from a judgment entered upon the verdict.

Plaintiff's verified statement of claim alleges: "1. That at the request of the defendant she rendered services as governess, nurse and housekeeper to the three minor children of the defendant, Josephine, Gerald and Edward, from November 15, 1931 to June 3, 1935; that the sum of fifteen dollars ($15.00) per week is a just, fair and reasonable compensation for the services rendered by her to the said defendant; that the total amount due her for such services, at the rate of $15.00 per week, is $2795.00. 2. Plaintiff further alleges that during said period of time she purchased clothing and food for the said three minor children at various times, the total amount of which exceeds $700.00. 3. Plaintiff further alleges that the total amount due her . . . is $3495.00."

The affidavit of defense avers that "1. The plaintiff did not, at the request of defendant, render services as governess, nurse and housekeeper to the three minor children of defendant from November 15th, 1931 to June 3, 1935; that the sum of $15.00 per week is not a just, fair and reasonable compensation for the services

alleged to have been rendered by plaintiff; that there is no amount due to plaintiff from defendant for the alleged services, as stated in Paragraph 1 of the Statement of Claim. 2. That plaintiff did not, at the request of defendant, purchase clothing and food for the three minor children, as alleged in Paragraph 2 of the Statement of Claim. 3. That defendant is not indebted to plaintiff for services alleged to have been rendered by plaintiff to defendant for the period from November 15, 1931 to June 3, 1935, in the sum of $3495.00; that he is not indebted to plaintiff in any sum whatsoever for any alleged services or alleged purchases of clothing and food, as set forth in the Statement of Claim filed herein by plaintiff. 4. That defendant has, at all times during the period alleged in the Statement of Claim, cared for, maintained, educated and supplied the necessary food and clothing for his said children and a place of abode for them.''

Defendant is the brother of plaintiff. Plaintiff is a graduate nurse, belongs to the Red Cross, and is an Army Reserve nurse. By his first wife defendant had three children, Josephine, Charles and Edward. Plaintiff and her mother owned the premises, 11036 Indiana avenue, in joint tenancy and not as tenants in common. Defendant, his first wife, and their three children lived there with the mother and plaintiff. The mother was ''stone blind'' and plaintiff was also obliged to take care of her. Defendant's first wife died in 1924. That plaintiff took care of the children from their birth until June 3, 1935 (at which time Josephine was 16 years of age, Charles was 13, and Edward was 11), is not disputed, and defendant conceded that he never paid plaintiff anything for her services in taking care of the children. The instant judgment awards plaintiff nothing for her services prior to November 15, 1931. Defendant married his second wife October 8, 1929. The mother of plaintiff and defendant died February 8, 1935. Defendant testified that he and his second wife

"graciously" left the children with plaintiff after the marriage so that "they [his mother and plaintiff] would have an income, so they would have something to fall back on. They had no income whatsoever, except the rent from upstairs." Defendant's second wife was a telephone operator, regularly employed during all of the time in question. Plaintiff testified that after defendant remarried he left the children to her "to clothe and to shelter and to look after," and that she "clothed them and fed them and took care of them"; that during the years in question she was kept busy taking care of the children and her mother, and was on that account unable to practice her profession. She testified that about June 3, 1935, "my brother asked me to sign over the property . . . or he would take the children"; that she said to defendant, "You take your children. It is the first time you offered. . . . If you take your children, you will take my bill. I had those children twelve years. I raised a little cripple that was a little incubator baby, that weighed a pound and fourteen ounces. . . . I did not object to his taking them. They were his children"; that defendant said "that he would take the children so far away that I would never see them." Plaintiff further testified that "they took the children when I didn't sign over," but "the children came back" to her. Defendant admits that plaintiff loved the children dearly, and the evidence conclusively shows that the three children loved plaintiff and that they were unhappy during the time they lived with the father and stepmother. Two of the children, Josephine and Charles, testified for plaintiff. Defendant testified that when he told plaintiff that he was going to take the three children away from her she said, "Before you and that witch get them you are married to, that hussy you are married to gets them, you will pay me handsomely." Plaintiff denied making this statement. Defendant did not deny plaintiff's testimony that he told her that unless she

signed over the property he would take the children away from her.

This case, like most cases that involve similar situations between the parties, caused bitterness between a brother and sister. Each party was represented by able counsel. Plaintiff's testimony was corroborated, in part, by two of the children. Defendant was the sole witness for the defense.

The first item in plaintiff's claim is for services as a governess, nurse and housekeeper for the three minor children from November 15, 1931, to June 3, 1935. Plaintiff testified that the services she rendered were reasonably worth 25 dollars a week. Anna L. Rick, a nurse, testified that 18 dollars per week would be a reasonable price for a housekeeper, governess and nurse who has not had much experience, but the reasonable charge would be 25 to 30 dollars per week where the party had education and experience. Defendant offered no testimony bearing on the question of what would constitute a reasonable charge. His main defense in the trial court and here as to this item in plaintiff's claim is that she does not claim that she had an express contract with him for her services and that she is obliged to rely upon an implied contract; that the law is that "where family relationship exists, there is no implied contract to pay for gifts or services rendered by one member of the family to the other members of the family." During defendant's direct examination the following occurred: "Q. Did she at any time, or did you at any time request her to take care of the children? A. I made no such guaranty or request of any kind. . . . Q. At any time during that period of time did you request your sister to render any services to those children? A. No, I made no such request." The principal case relied upon by defendant in support of his position is *Faloon v. McIntyre,* 118 Ill. 292. There it was held that in the absence of an express agreement to pay for the support and services

as between parent and child the law will presume that what one may do for the other is done gratuitously and as the prompting of natural affection; that where a father and mother reside in the family of their son-in-law for several years, without any express contract to pay for their support, and the facts and circumstances fail to show that any compensation was intended or expected to be given or received, but rather indicate that no charges were to be made on either side, the son-in-law will have no right to recover any sum for the support of his wife's parents. The *Faloon* case, under the facts, is not applicable to the instant one. The same may be said as to several other cases cited by defendant. In *Schweitzer v. Commissioner of Internal Revenue*, 75 F. (2d) 702, the court says (p. 704): " . . . the later decisions of Illinois, as well as other states and text-writers, support the respondent's contention that there was a duty resting upon petitioner to support his minor children in a manner commensurate with his position in life. *Peters v. Industrial Commission*, 314 Ill. 560, 145 N. E. 629; *Panther Creek Mines v. Industrial Commission*, 296 Ill. 565, 130 N. E. 321; *Polokow Corporation v. Industrial Commission*, 336 Ill. 395, 168 N. E. 271; *Superior Coal Company v. Industrial Commission*, 304 Ill. 320, 136 N. E. 762; *Charbonneau v. Norton*, 263 Ill. App. 341." It is a principle of natural law that it is the duty of a parent to support and maintain his own children, and under certain circumstances the law will imply a promise on his part to reimburse anyone who renders support and maintenance. (See *Charbonneau v. Norton*, 263 Ill. App. 341, 346, 347; *Mullally v. Lott*, 162 Ill. App. 533, 534.) We cannot say, under all the facts and circumstances of this case, that the jury were not justified in finding that there was an implied promise by defendant to pay plaintiff for her services. She sued for $2,795 for her services, and the jury, apparently, allowed her $1,100, which amounts to approximately six dollars a

week for the period from November 15, 1931, to June 3, 1935. As we view the record this award was inadequate compensation considering the nature of the services rendered.

The second item in plaintiff's claim is that she purchased clothing and food for the three minor children at various times, the total amount of which exceeds $700. We are satisfied that the jury were warranted in finding from plaintiff's testimony that during the period in question she spent $400 for the maintenance and support of the children, in addition to what defendant contributed for their support. It is true that defendant testified that he paid large amounts to his mother and plaintiff for the support and maintenance of the children. Plaintiff denied his testimony in that regard and the jury believed plaintiff's testimony that she was obliged to spend $400 for the maintenance and support of the children, and we see no good reason to disturb their finding. The testimony of the two children tends to support plaintiff's evidence. The trial court by entering judgment approved the verdict of the jury.

We have considered several technical contentions raised by defendant and find them without merit.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

JOHN J. SULLIVAN, P. J., and FRIEND, J., concur.