THE STATE BANK OF CLINTON, Appellee, *vs.* SYLVIA BAR-
NETT, Appellant.

*Opinion filed April 19, 1911—Rehearing denied June 7, 1911.*

1. APPEALS AND ERRORS—*when chancery case may be regarded as presented for a hearing de novo.* Where all the material evidence in a chancery case is taken before the master and reported without any conclusions of fact the chancellor has no better means of judging the candor, fairness and credibility of the witness than the Supreme Court, and on appeal the case may be regarded substantially as presented for hearing *de novo* on the same evidence.

2. WITNESSES—*a wife not competent to testify to conversations with husband during coverture.* A wife is not competent to testify to conversations with her husband during coverture in order to establish that though she was named as his beneficiary in a benefit certificate, she was, in fact, the nominal beneficiary and her daughter was the real beneficiary in interest.

3. TRUSTS—*when burden of establishing trust is upon the defendant.* In a proceeding to subject a fund represented by the proceeds of a benefit certificate to payment of a judgment against the named beneficiary, who received the proceeds and immediately turned the money over to her daughter, who invested the same, if the daughter claims that the money was turned over to her for no reason other than that it belonged to her as the real beneficiary and that her mother was a mere trustee, the burden is upon her to establish her contention by competent proof.

4. FRAUD—*what is necessary to render a gift presumptively fraudulent.* To render a gift presumptively fraudulent as to the donor's creditors it must be shown that there was a voluntary gift, that there was a then existing or contemplated indebtedness against the donor, and that the donor did not retain sufficient property to pay the indebtedness.

5. SAME—*when it is necessary to aver and prove insolvency of donor at time gift was made.* Where the complainant in a chancery proceeding seeks to reach the proceeds of a voluntary gift upon the ground that it was fraudulent, in law, as to the donor's creditors, there being no actual fraud, it is essential that the complainant aver and prove that the donor was insolvent at the time the gift was made.

6. SAME—*what does not show that donor was insolvent when gift was made.* Averment and proof that the complainant recovered a judgment against the donor of a voluntary gift, on a note existing when the gift was made, and that execution has been is-

sued and returned *nulla bona,* establishes *prima facie* the insolvency of the donor at the time the execution was returned but does not show that she was insolvent at the time the gift was made, which was more than two years before recovery of the judgment on which the execution issued.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

EDWARD J. SWEENEY, and DEMANGE, GILLESPIE & DEMANGE, for appellant.

LEMON & LEMON, and HERRICK & HERRICK, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellee, the State Bank of Clinton, on September 30, 1907, filed its creditor's bill in the circuit court of DeWitt county against Sylvia Barnett, the appellant here, Lucy J. Barnett, and others, alleging that on December 30, 1902, Lucy J. Barnett and W. A. Barnett, her husband, (now deceased,) executed and delivered to the appellee their two promissory notes for the sums of $1000 and $1394.89, respectively, to each of which notes was attached a power of attorney authorizing the confession of judgment thereon; that at the time of his death W. A. Barnett held a benefit certificate in the Modern Woodmen of America for the sum of $3000, payable to his wife; that his wife collected the amount of the benefit certificate and made a pretended gift of the same, without consideration, to her daughter, Sylvia Barnett, the appellant; that upon receiving the money Sylvia loaned the same to one B. C. Sprague, taking his promissory notes therefor; that she thereafter recovered judgments against Sprague aggregating $3125, upon which executions were issued, which were levied upon lands of Sprague; that on July 29, 1907, judgment by confession

was entered upon the said notes given to appellee, in the circuit court of DeWitt county, against Lucy J. Barnett for the sum of $3236.93; that execution was issued thereon and returned *nulla bona;* that appellant, aside from the judgments against Sprague, was insolvent, and if permitted to collect said judgments she would appropriate the money to her own use and appellee would be left without remedy, and that the money represented by said judgments was the property of Lucy J. Barnett and not that of the appellant. Upon the filing of the bill a temporary injunction was issued restraining the sheriff, who was made a defendant, from delivering to Sylvia Barnett a certificate of sale without receiving the money therefor, and commanding him to retain the proceeds of sale subject to the further order of the court. Lucy J. Barnett and appellant filed separate answers, by which they each admitted that upon the death of W. A. Barnett the proceeds of his benefit certificate were paid to Mrs. Barnett and by her transferred to appellant, who loaned the same to Sprague. The answers each deny that Mrs. Barnett had any interest in the proceeds of the benefit certificate, or in the notes given by Sprague to appellant, or in the judgments obtained against Sprague, and aver that although Mrs. Barnett was named in the benefit certificate as beneficiary the insurance was procured by W. A. Barnett for the sole benefit of appellant, and that the proceeds of the benefit certificate were the property of appellant and not that of Mrs. Barnett. The cause was referred to a special master in chancery to take the evidence and report the same, without his conclusions, to the court. Upon the hearing the court found the issues for appellee, and a decree was entered finding the facts substantially as alleged in the bill, ordering that the sheriff of DeWitt county be perpetually enjoined from paying the money which had been secured on the execution against Sprague, to appellant, and directing him to pay to appellee the money in his hands, to be applied on the judgment in its favor

against Lucy J. Barnett. Upon an appeal to the Appellate Court for the Third District this decree was affirmed. The cause is now brought to this court by appeal, upon a certificate of importance.

All the evidence in the case, with the exception of a small portion which is not material to this decision, was taken before the master and reported by him without any conclusions as to the facts. The chancellor had therefore no better means of judging the relative candor, fairness and credibility of the respective witnesses than we have, so the appeal may be regarded substantially as presenting the case to us for a hearing *de novo* upon the same evidence. *Baker* v. *Rockabrand,* 118 Ill. 365; *McGinnis* v. *Jacobs,* 147 id. 24.

Barnett died October 14, 1904. The proceeds of the benefit certificate were paid to Mrs. Barnett December 23, 1904, and the amount was immediately turned over to appellant. The notes given appellee, and upon which judgment was secured by confession against Mrs. Barnett on July 29, 1907, were dated December 30, 1902, and were due on demand and six months after date, respectively, with powers of attorney attached authorizing confession of judgment at any time. The fund in question was loaned to Sprague by appellant February 11, 1905.

The contention of appellant in the trial court, and one of her contentions here, is, that her mother, Mrs. Barnett, by parol agreement with her father, had been constituted a trustee to receive the proceeds of the benefit certificate and pay the same, upon his death, to appellant. To support her contention and to establish the existence of such parol trust, witnesses, including Mrs. Barnett, were called, who testified to statements made by W. A. Barnett, in his lifetime, that appellant was the real beneficiary in his benefit certificate, that arrangement had been made whereby his wife was to receive the money, in case of his death, for appellant, and as to his reasons for having made his wife

the nominal beneficiary instead of having the money paid directly to his daughter. All of this testimony was objected to on the ground that it was hearsay. Mrs. Barnett was not a competent witness to testify to any conversations with her husband during coverture. All of the testimony in regard to statements made by W. A. Barnett in reference to his purpose in carrying a benefit certificate in the Modern Woodmen and in reference to who his real beneficiary was is clearly incompetent. It does not come within any of the well known exceptions to the rule against hearsay evidence. Had appellant been able to establish by competent evidence the situation disclosed by the pretended statements of W. A. Barnett, she would have established the existence of a parol trust, as claimed. Mrs. Barnett was the beneficiary named in the benefit certificate, and the proceeds of that certificate were paid to her by the society of Modern Woodmen and were turned over by her to appellant. It is not claimed by the appellant that this fund was turned over to her for any other reason than that it belonged to her and did not belong to her mother. The burden was upon appellant to prove this contention, and there is no competent evidence in the record to sustain it.

Unless there was actual fraud in the transaction the transfer of this fund from Mrs. Barnett must be held to be a voluntary gift. Appellee insists that this transaction was fraudulent in fact. In support of this contention it produced two witnesses, B. C. Sprague and an attorney who had represented Sprague and who had also represented appellee. Sprague testified that on February 11, 1905, when he executed the notes to appellant, Mrs. Barnett and appellant both treated this money as the property of Mrs. Barnett, and that Mrs. Barnett on that occasion told him she was indebted to the appellee bank and desired to loan the money in the name of her daughter, as she did not want appellee to know where the money was. This testimony is contradicted by appellant, Mrs. Barnett and F. Y. Hamil-

ton, an attorney of Bloomington, who was present assisting appellant in making the loan.   Sprague's testimony is so contradictory and inconsistent that it is unworthy of consideration.   His story is also improbable for the reason that he was then, and had been for years, a stockholder and a director of the appellee bank, which fact was a matter of public knowledge.   The attorney who testified stated that Mrs. Barnett, Hamilton and Sprague called at his office and discussed the matter of the loan to Sprague and the giving of the notes, and detailed statements by Mrs. Barnett similar to those testified to by Sprague.   Both Hamilton and Mrs. Barnett deny that they were in his office on the day the notes were given or that they ever had such a conversation with him, and Sprague did not testify at all to that incident.   Hamilton and Mrs. Barnett both testified that they, in company with Sprague, were in this attorney's office on December 12, 1904, before the insurance money had been paid to Mrs. Barnett, and that on that occasion they discussed only a contract which had been made between Barnett, in his lifetime, and Sprague, who had been associated in business with him, and which this attorney had drawn, and that that was the only time they were ever in his office.   The testimony of these two witnesses is clearly overcome by the evidence on the part of appellant.   The whole evidence discloses that so far as the actions of appellant and Mrs. Barnett are concerned since the payment of this fund to Mrs. Barnett by the society of Modern Woodmen, it was treated by them as the property of appellant and not the property of Mrs. Barnett.   The record does not disclose any fraud, in fact, in reference to the transfer of this fund from Mrs. Barnett to her daughter, and if there is any fraud, it is only such fraud as is presumed by reason of the making of a voluntary gift.   In order to constitute presumptive fraud, or fraud in law, in such a case, three elements must be proven:   First, there must be a voluntary gift;   second, there must be a then

existing or contemplated indebtedness against the donor; and third, it must appear that the donor did not retain sufficient property to pay her indebtedness.

It is contended by appellant that the bill does not aver and the proof does not show the insolvency of Mrs. Barnett. The bill does aver, and the proof establishes, that appellee secured judgment against Mrs. Barnett, upon which execution was issued and returned *nulla bona.* This establishes *prima facie* the insolvency of Mrs. Barnett at the time of the return of the execution. There is no averment in the bill of the insolvency of Mrs. Barnett at the time of the gift to appellant and there is no proof of that fact in the record. Appellee attempted to make such proof by calling appellant as a witness, but the substance of appellant's testimony on this subject is, that she did not know what property her mother possessed or what her financial responsibility was at that time. Appellee having failed to prove fraud in fact, the burden of proof devolved upon it to show that Mrs. Barnett rendered herself insolvent by making this gift before it could establish presumptive or legal fraud. In passing upon this question in *Moritz* v. *Hoffman,* 35 Ill. 553, we said (p. 556): "No one will dispute the principle appellant seeks to establish, that a voluntary conveyance, when the grantor is indebted at the time of its execution, is presumptive evidence of fraud; and a fraudulent intent will be presumed from the fact that the party conveying was indebted at the time the conveyance was executed, and that as to pre-existing creditors every conveyance not made on a consideration valuable in law is void. The principle is thus broadly stated, but it is subject to some qualification,—to this extent, at least, that the debtor retains in his possession property sufficient to discharge all debts existing at the time of making the conveyance alleged to be fraudulent. If this was not permitted, trade of every description would be very much crippled, and instead of there being an active interchange of property the

whole business of the country would stagnate. No creditor without a lien has any right to complain that his debtor is giving away property to his wife or children, unless such creditor can establish the fact that he has not retained enough to satisfy existing debts. Such grantor must make himself insolvent by such gifts or conveyances, and to impeach them, fraud must be charged and proved." And in the same case we also said (p. 558): "To impeach such a conveyance successfully it lies upon the complainant to aver and prove that he was a creditor at the time and that the grantor was then insolvent, or such facts and circumstances as would authorize a court or jury to presume insolvency, none of which have been established in this case." This case was followed and approved in *Merrell* v. *Johnson,* 96 Ill. 224, *Bittinger* v. *Kasten,* 111 id. 260, and *Faloon* v. *McIntyre,* 118 id. 292. In the *Bittinger case* it was said: "The owner of property may at any time give the same to anyone he chooses, so long as he thereby injures no then existing creditor, * * * and the mere fact that he may be indebted is not alone sufficient to make a gift or voluntary conveyance by him inoperative;" and it was held that if the creditor failed to aver and prove insolvency of the debtor at the time the conveyance was made he was entitled to no relief. In passing upon the same question in *Dimond* v. *Rogers,* 203 Ill. 464, we said (p. 468): "In order to obtain relief it was necessary to prove a transfer which, in fact or in law, was fraudulent as to creditors, or in case of a voluntary gift or conveyance to the husband, that the judgment debtor did not retain enough money or property to pay her debts."

It will thus be seen that it was necessary to both aver and prove the insolvency of Mrs. Barnett at the time the gift was made, in 1904. It might well be that in December, 1904, when the gift was made to her daughter, she retained abundant means to pay all of her indebtedness, and that she had become insolvent when the judgment was

secured against her, in July, 1907. If such were the fact, it would be inequitable to compel appellant to now pay over to appellee money which her mother had a perfect right to give' her at the time the gift was made.

The decree of the circuit court and the judgment of the Appellate Court are reversed and the cause remanded to the circuit court, with directions to dismiss the bill for want of equity.    *Reversed and remanded, with directions.*