(No. 21115.—

C. C. BIRNEY, Trustee, Defendant in Error, *vs.* HAZEL
SOLOMON, Plaintiff in Error.

*Opinion filed April 23, 1932—Rehearing denied June 8, 1932.*

Reed Green, for plaintiff in error.

Dewey & Cummins, for defendant in error.

Mr. Justice Jones delivered the opinion of the court:

On January 30, 1925, the Alexander County National Bank of Cairo, Illinois, filed a creditor's bill in the circuit court of Alexander county against Jacob Solomon and his wife, Hazel Solomon, to set aside a deed made and delivered by Solomon and his wife to Alexander Wilson, and also a deed executed by Wilson to Hazel Solomon. Solomon was afterwards adjudged a bankrupt, and C. C. Birney, trustee of the bankrupt's estate, was substituted as party complainant for the Alexander County National Bank. Solomon died before the cause was heard in the circuit court. A demurrer to the bill was filed but was afterwards withdrawn. Upon the issues being made up the cause was referred to the master, who reported the evidence together with his conclusions of fact and law. He found the deeds constituted a voluntary conveyance and a gift from Solomon to his wife, Hazel; that at the time such conveyances were made Solomon was worth $34,384 over and above his indebtedness and liabilities; that he was not financially embarrassed at the time of making the deed, and that there was no fraud, either actual or constructive, connected with such conveyance. Objections filed before the master were overruled and stood as exceptions before the court. The chancellor sustained the exceptions and found that at the

time the deeds were made Solomon was financially embarrassed and insolvent; that the conveyances, together with the disposition of certain stocks, bonds and other investments, were part of a scheme of Solomon to defraud, and did defraud, his creditors. The decree ordered that the deeds be set aside and the title to such real estate be declared vested in the trustee in bankruptcy for the benefit of all the creditors whose claims had been allowed. The cause is in this court on writ of error brought by Hazel Solomon.

The evidence shows that Jacob Solomon had been a retail dealer in men's clothing and wearing apparel at Cairo for more than twenty-five years. His store was located on the principal retail street of the city. His stock of goods was of first-class quality and kept in a neat and up-to-date manner. Solomon was considered a shrewd, conservative buyer and good business man. He was a customer of the Alexander County National Bank, and in order to finance his business he established a line of credit with that bank varying from $8000 to $12,000. Pursuant to a business custom of the bank he was required to furnish, yearly, financial statements to it. Several of these statements were offered in evidence, the first of which bears date December 31, 1918, and shows assets of $64,178.44 and liabilities of $12,132.17, or a net worth of $52,046.27. The statement of April 25, 1921, shows his net worth to be $56,767.23. The statement of January 1, 1922, shows a net worth of $51,539.87. The statement of January 1, 1923, shows a net worth of $47,647.71. Among the assets listed in these various statements were real estate, stocks and bonds. The gross amount of these items in 1918 was $11,000. In 1921 the real estate was listed at $10,000 and the item of stocks and bonds at $9400. In 1922 the real estate was again listed at $10,000 and stocks and bonds $12,250. In 1923 real estate was listed at $10,000 and stocks and bonds at $12,000.

The real estate referred to in the various statements consisted of two lots upon which Solomon's home was located. According to the 1923 financial statement, nearly one-half of his net worth consisted of the value of his real estate, stocks and bonds. Between the dates of his statements in 1921 and 1923 his net worth diminished from $56,000 to $47,000. With this admitted business decline he caused a transfer to be made to his wife on September 27, 1923, of all of the real estate he owned. His next financial statement omitted the item of real estate but carried an item of "stocks, bonds and other investments, $11,000." It fixed his net worth at $32,384.26. His statement of December 31, 1924, not only omitted the item of real estate but also the item of stocks and bonds. It fixed his net worth at $17,091.90. This declining financial condition caused the officers of the bank to call Solomon's attention to the omission from his financial statements of the items of real estate and stocks and bonds and he was asked to give security for what he owed the bank. He refused to comply with the request, and a judgment by confession was entered against him upon his notes for $11,846.77. An execution was immediately issued and levied on his stock of goods. The bill of complaint herein was filed the same day. The execution was afterwards returned with the following endorsement: "Not satisfied because the case taken by Federal court through Bankruptcy law."

It is argued that the chancellor had no jurisdiction to entertain the creditor's bill in this proceeding because the execution had not been returned *nulla bona* prior to the filing of the bill. The statute requires, and this court has repeatedly held, that when a creditor seeks to satisfy his debt out of some equitable estate of the defendant which is not liable to a levy and sale under an execution at law, he must exhaust his remedy at law by obtaining judgment and getting an execution returned *nulla bona* before he can

come into a court of equity for the purpose of reaching the equitable estate of the defendant, otherwise it would not appear that the party has no complete remedy at law. (*Newman* v. *Willetts,* 52 Ill. 98.) But plaintiff in error is not in a position to invoke this rule because the objection now raised was not presented by demurrer, plea or answer. A demurrer was filed but later withdrawn before a ruling on it was requested and the answer makes no reference to the objection. An identical situation was before this court in *Hart* v. *Oliver,* 226 Ill. 209. In that case the execution was returned "no part satisfied." The opinion states that the purpose of the requirement for a return *nulla bona* as a condition precedent to the right to maintain a creditor's bill was to show that the judgment creditor has exhausted all his remedies at law before he applies to a court of chancery for relief. However, it was held that the defendant had waived his objection to the want of a proper return on the execution by appearing and voluntarily submitting himself to the jurisdiction of the court and that such an objection comes too late on appeal. For the same reason the jurisdiction of a court of equity in this case cannot now be questioned.

Plaintiff in error insists that a creditor's bill cannot be maintained to set aside a deed unless there is a positive showing of the grantor's insolvency. The established rule in this State does not require proof of actual insolvency in order to render a voluntary conveyance void, especially when the conveyance is between husband and wife or parent and child. The true test in determining the validity of a voluntary conveyance as against creditors in such a case is whether or not it directly tended to or did impair the rights of creditors. It is of no moment that the property remaining in the grantor's hands after the conveyance was in nominal value more than equal to the amount of his indebtedness if subsequent events show that the property retained was not sufficient to discharge all his liabilities,

(*Hockett* v. *Bailey*, 86 Ill. 74; *Hauk* v. *VanIngen*, 196 id. 20; *Patterson* v. *McKinney*, 97 id. 41.) The doctrine is firmly declared to be that one must be just before he is generous. What may be in the mind of the grantor when he makes a voluntary conveyance to his wife or child is immaterial, for if it results in hindering, delaying or defrauding creditors it must be regarded as fraudulent. A donor may make a conveyance with the most upright intentions, and yet, if the transfer hinders, delays or defrauds his creditors it may be set aside as fraudulent. (*Marmon* v. *Harwood*, 124 Ill. 104; *McKey* v. *McCoid*, 298 id. 566.) Of such force is this rule that where one is found to be insolvent after having made a voluntary conveyance to his wife the burden of dispelling the implication of fraud as against pre-existing creditors is upon his grantee. *Dillman* v. *Nadelhoffer*, 162 Ill. 625; *Moritz* v. *Hoffman*, 35 id. 553; *Patterson* v. *McKinney*, *supra*.

The financial worth of Jacob Solomon was rapidly decreasing. In the latter part of 1923 he disposed of his real estate holdings, and some time during 1924 he disposed of all of his stocks and bonds without any satisfactory explanation of the disposition of the major part of the proceeds. Early in 1925 he was a bankrupt and his creditors were paid only forty-two per cent of the amount of their claims. Under the circumstances it cannot be doubted that his voluntary conveyance of real estate, made when he was in failing circumstances and while he was largely indebted, not only tended to hinder but did hinder and delay his creditors, hence it must be deemed to have been fraudulently made.

The financial statements above referred to were offered in evidence by the defendant in error, and it is claimed he is bound by their showing of Solomon's solvency. This is not a correct view of the rule of evidence. These documents were offered for the purpose of showing Solomon's declining financial condition and were in the nature of admissions against interest. Defendant in error only vouched

416

for the authenticity of the statements and not for the correctness of the figures or the deductions made from them by Solomon.

The decree conforms to our views of a proper determination of the cause, and it is therefore affirmed.

<em>Decree affirmed.</em>