M. A. Adams et al. (Charles H. Albers, Successor Receiver of Bank of Bishop Hill) Appellant, v. A. F. Deem et al., Appellees.

Gen. No. 9,330.

572

Opinion filed August 30, 1938.

Albert E. Bergland, of Galva, for appellant; Reynolds M. Everett, of Galva, of counsel.

Joseph L. Shaw, of Geneseo, for appellees.

Mr. Justice Huffman delivered the opinion of the court.

This was a creditor's bill brought by appellant receiver to set aside an alleged fraudulent conveyance of a 160 acre tract of land located in Henry county. Appellant became a judgment creditor of A. F. Deem by virtue of a judgment recovered against him on January 5, 1933, in the circuit court of said county, in the sum of $3,864.14. Execution issued thereon against the judgment debtor. He filed no debtor's schedule. The sum of $442.50 was realized by appellant on the judgment. Subsequently, this suit was brought by appellant against the said A. F. Deem and Clara, his wife, and their son A. Charles Deem and Dorothy, his wife, and Theodore Titlow, tenant of the premises, to set aside an alleged fraudulent conveyance thereof made by A. F. Deem and wife to their son Charles.

The complaint was in the usual form, alleging that while A. F. Deem was indebted to plaintiff, the conveyance was made without consideration, and was but a sham and device for the purpose of hindering and defrauding the appellant and other creditors. The cause was referred to the master, who found that the deed in question, which recited a consideration of one dollar and other considerations, was not real, but was a sham and made with the intention of hindering, delaying and defrauding appellant and other creditors of the said A. F. Deem; that no consideration was in fact paid by the son Charles to his father for such conveyance, and that the son held the premises in trust for the use and benefit of his father and for the purpose of preventing a levy and sale thereof by virtue of

execution issued under appellant's judgment. The master recommended a decree in favor of appellant and against defendants; that the deed in question be set aside and vacated as to appellant, and the property subjected to sheriff's sale under execution to satisfy appellant's judgment and costs. A. F. Deem and son Charles, filed exceptions to the master's report, excepting generally to each finding therein and concluding with the allegation that the same was against the law and the evidence. This last statement reflects the import and effect of the exceptions filed. They were sustained by the chancellor, and the complaint dismissed for want of equity. Appellant (complainant below) prosecutes this appeal from the above action of the trial court.

The master found that appellant was the duly qualified and acting receiver of the bank of Bishop Hill; that on January 5, 1933, his predecessor receiver recovered judgment in the circuit court of Henry county against A. F. Deem for the sum of $3,864.14 and costs; that thereafter execution issued on said judgment; that the defendant failed to file debtor's schedule and the sum of $442.50 was recovered by the sheriff from the defendant by virtue of said execution; that the balance of the above judgment remains unsatisfied. The master further found that the defendant A. F. Deem was the owner of the premises in question herein; that on July 1, 1930, he conveyed said premises to a son, A. Charles Deem, for a pretended consideration of one dollar and other considerations; that said farm on the day of the above conveyance was reasonably worth $32,000, and was then subject to a first mortgage lien to the First National Bank of Galva, Illinois, in the principal sum of $12,000; that Clara W. Deem is the wife of A. F. Deem; that Dorothy Deem is the wife of A. Charles Deem, to whom she was married subsequent to July 1, 1930; that Theodore Titlow is a tenant on the property. The master next found that on and

prior to July 1, 1930, A. F. Deem was president of the First National Bank of Galva, and that his son Charles was working in said bank, and closely associated with his father in his business affairs; that the son knew his father's financial condition; that the son owned the home where his father and mother lived, by a conveyance from his mother; that no rent was paid for the occupancy of the home; that Charles also held 80 acres of land near Galva and 320 acres in Nebraska, conveyed to him by his parents, and that he owned the automobile used by the father in his present business as salesman; that in addition to the above, the son held a 40 acre tract in Knox county, conveyed to him by his father subsequent to July 1, 1930, and which he had since sold. The master found that by virtue of the foregoing transactions, the father had divested himself of record title to all real estate owned by him. It was further found that after the conveyance of the farm here in question, the father continued to operate and manage it in all respects as if he was still the owner; that he leased the farm in his own name from February, 1932, to February, 1933, to certain tenants who were in no way advised that the father was not the owner thereof; that he visited the farm during the lease period every two or three weeks, and directed the management thereof as landlord; that he entered into a partnership arrangement with the tenants in respect to raising livestock and arranged for the selling thereof and collecting the money therefor; that the father carried a general account at the bank in his own name, in which account the proceeds from the livestock and the farming operations were deposited; that the defendants A. F. Deem and Clara, his wife, and the son Charles, all drew upon this general account; that after the transfer of the farm, the general account was continued as usual, in the name of the father, and the taxes assessed against the farm were paid from such account; that livestock purchased was paid for from said

account, and the proceeds therefrom deposited in said account; that the father claims the money for the transactions so carried on by him with reference to the farm, was furnished by the son, but that no corroborative evidence appeared to substantiate such claim.

Separate answers were filed by the several defendants. A. F. Deem answers, admitting the indebtedness and judgment, and the conveyance of the farm in question to his son Charles, as claimed. He denies that the conveyance of the farm rendered him insolvent; denies any intention to defraud the plaintiff; alleges a loan of $1,000 from his son Charles, and a further indebtedness to his son of $4,372.10 on account of certain money intrusted to him by Cynthia Turner, with directions that he should deliver the same to his son Charles as a gift from her. The answer sets up a mortgage of $12,000 on the farm; alleges a total indebtedness of $5,372.10 by the father to the son on account of the two foregoing items; and alleges that the equity in the farm over and above the amount of the mortgage and the debt of the father, was given to the son as a wedding present in view of his coming marriage. The defendant A. F. Deem further denies that he was in failing circumstances at the time of the conveyance, and denies all charges of fraud in the transaction. The answer of the other parties in interest, do not vary in material particular from that of A. F. Deem.

The evidence of the father discloses that Cynthia Turner was a second cousin living in Sterling, Illinois; that she had been a widow for about 15 years; that prior to her moving to Sterling, she had been a resident of the State of Iowa; that she was past 80 years of age, and physically unable to go from Sterling to Galva; that at various times, he would go to Sterling to see her, where she delivered to him money by way

of certificates of deposit, bank drafts and checks, which he claims totaled the aggregate sum of $4,372.10; that Mrs. Turner died about four years prior to the trial of this cause, and that the above transactions had between him and Mrs. Turner occurred during the latter two years of her lifetime. He further states that he had looked after her business affairs during the latter years of her life; and that a joint checking account was carried in her name and his name in the bank at Sterling, where she did her banking business. It is claimed by Mr. Deem that the money he received from Mrs. Turner was given to him for delivery to his son Charles, as a gift, but that he did not so deliver it, but deposited the same in his own account in the First National Bank at Galva, and used it in the same manner as he used his other funds. It appears that his son Charles was working in the bank at the time, as cashier, and knew of his father's receiving the above money from Cynthia Turner, as well as his disposition and use thereof. Cynthia Turner left no estate except her household furniture, and no administration was had of her estate. Mr. Deem states that at the time of her death, she had intrusted all of her money to him, consisting of the above total, and that he never gave her any receipts therefor.

It was claimed by A. F. Deem that the farm was conveyed to his son in payment of a debt of $5,372.10 owed by him to his son; that the debt consisted of two items, namely, $1,000 for cash advanced to him by his son in 1924, at a time when the son was yet in school. It is claimed by the father that this money came from a savings account in the name of his son carried at the bank in Galva, of which his father was president; and second, the sum of $4,372.10, being the total claimed by Mr. Deem to have been received from Cynthia Turner, as aforesaid, and which money he claims was received for the purpose of delivery to his son as a gift from

Cynthia Turner. It is conceded that at the time of the conveyance, the land in question was worth $32,000, and incumbered by a $12,000 mortgage which Mr. Deem had placed thereon with his bank after becoming owner of the farm. The father urges that the amount of the above mortgage indebtedness, together with that of his personal indebtedness to his son, namely, $17,372.10, was a lien and debt justly due and that the equity existing in the premises, consisting of some $14,000, was intended to be given to the son as a wedding present. Testimony was offered by two nephews of Cynthia Turner, that the money delivered by her to A. F. Deem was for the purpose of safekeeping.

The master found, with reference to the $4,372.10 claimed to have been received by the father from Cynthia Turner as a gift to his son, that there was not sufficient evidence going to support such claim. The master further found that the father by the transfers of his lands to his son, rendered himself insolvent so far as his visible personal property applicable to claims of creditors was concerned; that he retained insufficient assets to pay his indebtedness to his creditors on the date of the transfer of the farm in question; that such assets as he did claim to have retained, were doubtful and had no market value; that the father's indebtedness on July 1, 1930, amounted to about $48,000, and that his assets at such time were not in excess of $31,000; that none of the transactions made between the father and son, or claimed to have been made by them, were such as were customary among business men in ordinary business practices; that no interest appears to have ever been charged or collected; that the father was in failing financial circumstances, and that the family affairs were not conducted in a manner and mode as usual transactions are conducted between debtor and creditor.

The conclusion of the master was to the effect that the deed in question by A. F. Deem and wife, to their

son Charles, was not a bona fide transaction, but was a sham made with the intention of hindering, delaying and defrauding the complainant and other creditors of the said A. F. Deem, from collecting their just demands; that no consideration was in fact paid by the son to the father for said conveyance; that the son holds the property in trust for the father for his use and benefit and for the purpose of preventing a levy and sale thereof by virtue of execution issued under the complainant's judgment. The master found the equities to be with the complainant below, and recommended that a decree be entered, setting aside and vacating the conveyance in question as to the complainant, and that the complainant be authorized to proceed under execution to have the property described sold at a sheriff's sale to satisfy plaintiff's judgment. The master found that $442.50 had been collected on the judgment and was to apply as a credit thereon, and found that the premises were subject to the $12,000 mortgage.

The rule is well established that the validity of a voluntary conveyance as against creditors, is to be determined by the question whether it directly tends to impair the rights of creditors, and it is of no moment that property remaining in the grantor's hands after such conveyance, has a nominal value in excess of the amount of his indebtedness, if subsequent events show that the property so remaining in his hands was insufficient to discharge his liabilities. *Birney v. Solmon,* 348 Ill. 410, 414; *Wright v. Risser,* 290 Ill. App. 576, 584; *Kennard v. Curran,* 239 Ill. 122, 128. In cases of this character, proof of fraud is seldom possible by direct evidence, and recourse to circumstantial evidence becomes a necessity, and fraud may be proved by circumstances which convince the mind of its existence. *Swiney v. Womack,* 343 Ill. 278, 288; *Schwarz v. Reznick,* 257 Ill. 479, 485; *Reed v. Noxon,* 48 Ill. 323. When the conclusion necessarily results that a convey-

ance was made with fraudulent intent to defraud, hinder or delay creditors, it makes no difference that other motives were combined with such purpose. *Phillips v. Kesterson,* 154 Ill. 572, 574. The fact that the grantor denies he intended to defraud creditors, is not conclusive upon the court if from other evidence or from the inherent improbability or contradictions in the testimony, the court is of a contrary opinion. *Kennard v. Curran, supra,* p. 129; *Marmon v. Harwood,* 124 Ill. 104, 110. With certain qualifications, the rule has long been recognized that a fraudulent intent will be presumed from the fact that a grantor making a voluntary conveyance is indebted at such time. *State Bank of Clinton v. Barnett,* 250 Ill. 312, 318. Where an immediate member of a family is preferred as a creditor, there must be clear and satisfactory proof of a valid existing debt which could be enforced and payment exacted, and the fact of the family relationship is proper to be considered in connection with other evidence to impeach the transaction. *Bartel v. Zimmerman,* 293 Ill. 154, 163. One found to be insolvent after having made a voluntary conveyance, has the burden of disproving the implication of fraud as to pre-existing creditors, arising from the making of such conveyance. *Dillman v. Nadelhoffer,* 162 Ill. 625, 631.

Mr. A. F. Deem was a stockholder and director in the Bank of Bishop Hill, owning thirty-five shares of stock therein. He was president of the First National Bank of Galva, as stated above, owning twenty-five shares therein. This latter bank also went into receivership. He was a large owner of stock in the Ralph C. Dixon Company, for which he owed $30,212, and which stock he had put up as collateral to secure his notes for the purchase money therefor. He also had a $500 bond on the Stevens Hotel in Chicago, and a scattering of stocks and bonds in oil companies and railroads, which were of a very poor grade. It is the

contention of Mr. Deem that these remaining securities left him solvent. These securities were highly speculative in character and of uncertain value. Some of them were hypothecated. The result was, their value proved to be inconsequential. He owned no real estate after 1930. He was an indorser on about $35,000 worth of paper in addition to the farm mortgage notes. On the question of his remaining assets after the transfer of the land in question, we are in accord with the finding of the master, that the same were highly speculative in character and of uncertain value, and that he did not then retain or possess property sufficient to meet his liabilities. Subsequent events disclosed the insufficiency of such assets. Assets and securities of this character are to be considered in the light of their speculative character. *Dillman v. Nadelhoffer, supra,* p. 631. Objections is made with reference to evidence concerning certain real estate transfers to Charles by his parents, which were made some years before the indebtedness arose upon which this judgment is based. Most of those transfers were too remote to be of any significance and it is apparent that the master did not consider them in determining the issues in this case. The only transfer of property which is complained of in this suit is that of the farm in question, and that conveyance appears to have left the grantor without any available means with which to pay the plaintiff's debt.

The facts and circumstances in evidence in this case, support the finding of the master. We do not find sufficient evidence going to establish a gift from Cynthia Turner to Charles Deem for the $4,372.10 as claimed. The evidence further supports the fact that the father was in failing circumstances at the time of the conveyance. It is not unreasonable to assume that he knew the financial condition of the bank of which he was president, as well as his own financial circum-

582

stances as they then existed. Subsequent events prove his failing financial circumstances. The court should not have dismissed the bill for want of equity, but should have entered a decree setting aside the deed in question and granting relief to appellant as prayed, and as recommended in the master's report.

The decree of the circuit court is therefore reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*