### In re William MARTIN, Sr., Debtor.

### No. 90 C 2376.

United States District Court,
N.D. Illinois, E.D.

Jan. 31, 1991.

Bernard M. Kaplan, Ruben, Kaplan & Rosen, Skokie, Ill., for William Martin, Sr., appellee.

Paul M. Bauch and David D. Cleary, Bell, Boyd & Lloyd, Chicago, Ill., for appellant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Bay State Milling Company ("Bay State") is a judgment creditor of William Martin, Sr. Bay State appeals from an order of the bankruptcy court denying a motion for an order authorizing it to pursue a fraudulent conveyance adversary proceeding on behalf of the estate alleging that the debtor's gifts of controlling shares of stock to his children were avoidable and appeals from the findings of the bankruptcy court that the gifts were valid. *In re Martin*, 113 B.R. 949 (Bankr.N.D.Ill.1990).

Bay State is a supplier of flour and grain products. Martin is the owner of National Flour Company of Illinois ("National Flour"), an Illinois corporation. Until October, 1989, National Flour was engaged in the business of wholesale flour distribution. Martin is also the owner of 45 percent of the outstanding shares of Country Maid Bakeries, Inc. ("Country Maid"), an Illinois corporation. Until June 1, 1985, Martin owned 60 percent of the shares of Country Maid. On or before June 1, 1985, Martin transferred his controlling interest in Country Maid to his children. Also, Martin formerly owned 50 percent of the outstanding shares of National Flour Company of Wisconsin ("Wisconsin"), a Wisconsin corporation. Wisconsin was also engaged in the business of wholesale flour distribution. On or about February 1, 1985, Martin sold his interest in Wisconsin to Phillip Sylvester.

On March 14, 1967, Martin and his wife executed a guarantee of National Flour's obligation to Bay State. On August 10, 1983, Martin and Sylvester executed a guarantee of Wisconsin's obligations to Bay State. Bay State shipped goods to Wisconsin on open account. Wisconsin failed to pay Bay State for the goods sold and delivered. Bay State demanded payment on the guaranty. Martin refused to honor his guaranty, asserting that the sale of his stock interest in Wisconsin to Sylvester extinguished his personal liability on the Wisconsin guarantee.

On or about June 1, 1985, Wisconsin, Sylvester and Martin owed Bay State approximately $400,000. On or about that date, Martin executed an instrument of gift purportedly transferring 15 percent of his shares of Country Maid to his children, William Martin, Jr., Diana Franchi and Betty Doty. These transfers allegedly occurred in December, 1984. Because they were not recorded on the company books until June 1, 1985, they are not treated as having taken effect until that time. (*Cf.* 11 U.S.C. § 548(d)(1).) As a result of this transfer, the debtor reduced his majority interest in Country Maid to a minority interest. His minority interest in Country Maid is worth substantially less than a majority interest because it does not carry with it the right to control the business.

In August, 1985, Bay State sued Martin, Sylvester and Wisconsin in the United States District Court for the Eastern District of Wisconsin. Sylvester and Wisconsin filed cross-claims against Martin charging fraud and conversion. The court entered summary judgment in favor of Bay State and against Martin with respect to the Wisconsin guarantee. A trial was conducted relating to damages and the cross-claims which resulted in judgments in favor of Bay State in the amount of $447,528; in favor of Sylvester in the amount of $50,000 in compensatory damages and $70,025 in punitive damages; and in favor of Wisconsin in the amount of $25,998 in compensatory damages. Bay State initiated collection

proceedings in the Circuit Court of Cook County, Illinois. On June 13, 1989, Martin filed a petition for relief under Chapter 11 of the Bankruptcy Code. On October 22, 1990, the United States Court of Appeals for the Seventh Circuit affirmed the judgments of the district court in the Wisconsin litigation. *Bay State Milling Company v. William W. Martin, Sr.*, 916 F.2d 1221 (7th Cir.1990).

Bay State filed a motion to dismiss or convert the Chapter 11 proceedings on September 7, 1989. On November 14, 1989, Bay State made demand upon the debtor to bring an action to avoid the transfer of 15 percent of the outstanding shares of stock in Country Maid. On December 20, 1989, Bay State moved for an order authorizing it to pursue an adversary fraudulent conveyance claim on behalf of the estate alleging that the debtor's gifts of Country Maid Stock to his children were avoidable pursuant to Section 544(b) of the Bankruptcy Code and Section 4 of the Illinois Fraudulent Conveyance Act. The motion was consolidated for hearing with the motion to dismiss and convert then set for hearing on December 28, 1989. After taking evidence, the bankruptcy court found the transfers were valid gifts, denied the motion for leave to pursue a fraudulent conveyance action and denied the motion to convert.

Bay State argues on appeal that the bankruptcy court erred in deciding the merits of the fraudulent conveyance issue and erred in determining that Bay State bore, and failed to satisfy, the burden of proving that Martin was insolvent at the time that gifts of Country Maid stock were made to his children.

█ Bay state sought permission from the bankruptcy court to initiate an adversary proceeding pursuant to Bankruptcy Rule 7001. Without permission from the bankruptcy court a creditor lacks standing to initiate actions to avoid fraudulent conveyances. *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202–03 (7th Cir.1988) (right to invoke Sections 544 and 548 does not belong to a particular unsecured creditor); *Nebraska State Bank v. Jones*, 846 F.2d 477, 478 (8th Cir.1988) (creditors lack

standing to bring action to set aside alleged fraudulent conveyance); *In re Sinder*, 102 B.R. 978, 981–83 (Bankr.S.D.Ohio 1989); *Boyd v. Martin Exploration Co.*, 56 B.R. 776, 781 (E.D.La.1986).

█ In order to obtain permission to undertake an adversary action to set aside a fraudulent conveyance, a creditor must first make a request of the debtor in possession regarding the initiation of the action for the benefit of the estate, and the request must be refused or ignored. Here it was ignored. The creditor must then persuade the bankruptcy court that there is a colorable claim which, if successful, would benefit the estate and that the debtor's inactivity on the claim is unjustified. Without ever ruling on the propriety of an adversary action, the bankruptcy court ruled on the merits. Bay State reasonably believed that the consolidated proceedings would relate only to its right to proceed with an adversary action against the debtor and his children concerning the transfers. Implicit in the bankruptcy court's determination on the merits is a conclusion that the avoidance claim was colorable and that failing to present it would be unjustified. (Had the bankruptcy court concluded that the burden of proof on the issue of insolvency was on the debtor, Bay State would have prevailed.)

█ Until Bay State was authorized to institute an adversary proceeding and, until a complaint was filed and summons issued bringing the donees of the stock before the bankruptcy court, the claim should not have been adjudicated. Bankr.Rule 7001 (providing for adversary proceedings "to recover money or property"); *In Re Commercial Western Finance Corp.*, 761 F.2d 1329, 1336–37 (9th Cir.1985); *In re L.G. Edwards Farm, Inc.*, 30 B.R. 842, 844–45 (Bankr.E.D.Mo.1983); *In re Lionel Corp.*, 23 B.R. 224, 225 (Bankr.S.D.N.Y.1982). After being authorized to proceed, Bay State was entitled to time for discovery and a hearing on the merits which was lost by the bankruptcy court's adjudication of the claim without ruling on the merits of the motion. The merits of the claim must be resolved in the context of an adversary

proceeding as required by Bankruptcy Rules 7001 through 7087.

Inasmuch as this case must be remanded for adversary proceedings on the merits of the fraudulent conveyance claim, it is appropriate to consider whether the bankruptcy court erred in its analysis of a proponent's burden in this proceeding.

■■■ The parties agree that Ill.Rev. Stat. ch. 59, ¶ 4 (1985) applies to Bay State's claim of fraudulent conveyance of Country Maid stock. The parties further agree that Illinois law recognizes claims of both fraud in fact and fraud in law. *See Indiana National Bank v. Gamble,* 612 F.Supp. 1272, 1276 (N.D.Ill.1984). A fraud in fact claim requires proof of an intent to defraud. Intent to defraud, however, is irrelevant to a claim of fraud in law. Instead, a fraud in law claim requires proof of objective factors showing fraud ("badges of fraud"). If sufficient objective factors are proven by the party claiming a fraudulent conveyance (hereinafter referred to as a "creditor"), then the conveyance is presumed to be fraudulent and the party opposing the claim (usually a donor or donee and hereinafter referred to as the "opposing party") has the burden of rebutting the presumption. The parties agree

that the most common elements of a fraud in law claim[1] are: (1) a voluntary conveyance without consideration; (2) an existing or contemplated indebtedness; and (3) an impairment of the rights of the creditor.[2] The parties dispute the question of which side bears the initial burden of showing the third element. This is a crucial issue because the bankruptcy court found there was insufficient evidence presented to determine if Martin was insolvent at the time of the gift and therefore whichever side had the burden on that issue failed to meet its burden. *See In re Martin,* 113 B.R. at 957.

■■■ It has long been held, including in a number of Illinois Supreme Court cases, that the creditor bears the initial burden of showing an impairment of its rights. *Mills v. Susanka,* 394 Ill. 439, 68 N.E.2d 904, 908–09 (1946); *State Bank of Clinton v. Barnett,* 250 Ill. 312, 95 N.E. 178, 181 (1911); *Dimond v. Rogers,* 203 Ill. 464, 67 N.E. 968, 970 (1903); *Bittinger v. Kasten,* 111 Ill. 260, 265–66 (1884); *Moritz v. Hoffman,* 35 Ill. 553, 560–61 (1864); *Guger v. Tolusas,* 325 Ill.App. 576, 60 N.E.2d 278, 278 (1945) (abstract opinion); *Woodham v. Miller,* 319 Ill.App. 388, 49 N.E.2d 317, 320 (1943); *Knowles v. Crow,* 289 Ill.App. 108, 6 N.E.2d 892, 894 (1937);

---

1. Other objective factors can also be sufficiently suspicious to raise the presumption. *See* I.L.P., *Fraudulent Conveyances* § 285 at 227. *See, e.g., Harris v. Aimco, Inc.,* 66 Ill.App.3d 60, 22 Ill. Dec. 823, 383 N.E.2d 631, 633 (1978). In the present case, a reason for the gifts was said to be "estate planning," although whose "estate" or what "planning" objective was involved was not shown to be a subject of inquiry or findings (possibly because the claim was heard on the merits only a few days after authorization was sought).

2. If these elements exist, the opposing party can rebut the presumption by showing the creditor's rights were not impaired at the time of the conveyance or by showing that the conveyance was for adequate consideration. Evidence of a lack of fraudulent intent is irrelevant. By impairment of the creditor's rights, it is meant that collection of the debt is hindered; it is not necessary to show *that the donor is actually insolvent* if it is shown that he was deeply in debt or unable to pay his indebtedness.

The established rule in this state does not require proof of actual insolvency in order to render a voluntary conveyance void, especially when the conveyance is between hus-

band and wife or parent and child. The true test in determining the validity of a voluntary conveyance as against creditors in such a case is whether or not it directly tended to or did impair the rights of creditors. It is of no moment that the property remaining in the grantor's hands after the conveyance was in nominal value more than equal to the amount of his indebtedness if subsequent events show that the property retained was not sufficient to discharge all his liabilities. The doctrine is firmly declared to be that one must be just before he is generous. What may be in the mind of the grantor when he makes a voluntary conveyance to this wife or child is immaterial, for, if it results in hindering, delaying, or defrauding creditors, it must be regarded as fraudulent. A donor may make a conveyance with the most upright intentions, and yet, if the transfer hinders, delays, or defrauds his creditors, it may be set aside as fraudulent. *Birney v. Solomon,* 348 Ill. 410, 181 N.E. 318, 320 (1932). *See also* I.L.P., *Fraudulent Conveyances* §§ 3, 52, 290.

*Southeastern Health Care Facilities, Inc. v. Payton Health Care Facilities, Inc.*, No. 87 C 0429, 1988 WL 53183 (N.D.Ill. May 13, 1988); I.L.P., *Fraudulent Conveyances* § 283 at 224. *See also Effingham State Bank v. Blades*, 139 Ill.App.3d 259, 93 Ill. Dec. 764, 487 N.E.2d 431, 435 (1985) (following *Mills, supra*); *Indiana National*, 612 F.Supp. at 1276. There are, however, some appellate court cases that indicate the opposing party has the initial burden of showing a creditor's rights were not impaired. *Cairo Lumber Co. v. Ladenberger*, 313 Ill.App. 1, 39 N.E.2d 596, 600 (1942); *Murrie v. Carter*, 222 Ill.App. 447, 450 (1921); *Dunphy v. Gorman*, 29 Ill.App. 132, 135 (1888).[3] *See also Second National Bank of Robinson v. Jones*, 309 Ill.App. 358, 33 N.E.2d 732, 736–37 (1941).[4] Since the appellate court cases relied upon by Bay State are not subsequent to the latest Illinois Supreme Court case to the contrary, this court should follow the view of Illinois's highest court. However, some of the cases cited can be reconciled. They can be understood as holding that when a donor subsequently becomes insolvent, the third element is satisfied and the opposing party then bears the burden of proving the creditor's rights were not impaired at the time of the conveyance. *See Birney v. Solomon*, 348 Ill. 410, 181 N.E. 318, 320 (1932); *Adams v. Deem*, 296 Ill.App. 571, 16 N.E.2d 817, 821 (1938); I.L.P. § 283 at 225. Such insolvency, however, must occur shortly after the time of the conveyance.

*See Clinton*, 95 N.E. at 181 (proof that donor was insolvent in July 1907 is not a basis for shifting burden to opposing party to prove donor was solvent when gift was made in December 1904). In the present case, the conveyance was in 1985 and Martin did not file for bankruptcy (a chapter 11 reorganization) until 1989. The subsequent bankruptcy petition is too far removed in time to impose the burden on Martin to show that Bay State's rights were not impaired in 1985. In this case, Bay State has the initial burden of showing its rights were impaired at the time of the conveyance, or showing that Martin was insolvent shortly after the time of the conveyance.

In concluding that Bay State has the initial burden of showing its rights were impaired at the time of the conveyance, or showing that Martin was insolvent shortly after the time of the conveyance, this court essentially agrees with the view taken by the bankruptcy court as to who has the burden of proof. The fact that the burden of this showing fell on Bay State demonstrates the importance of adjudicating the merits of such a claim only in the context of an adversary proceeding after the proponent is allowed an opportunity for discovery and preparation.

IT IS THEREFORE ORDERED that the Clerk of the Court enter a judgment vacating the order of the bankruptcy court entered March 6, 1990 and remanding the

3. Bay State also cites *Indiana Bank*, 612 F.Supp. at 1276, selectively quoting the following passage: "... the presumption of fraud in such cases can be rebutted only by [sic] if the debtor shows that he retained sufficient property to pay his or her obligations,...." Bay State ignores the beginning of that same paragraph in which the court states the "creditor must prove" three elements including "(3) failure of the debtor to retain sufficient assets to pay the indebtedness." In the passage quoted by Bay State, it is clear that "such cases" refers to cases where the creditor has already proven the initial three elements, including impairment of its rights. This interpretation is further supported by the factual discussion in the case indicating the creditor presented the initial proof on the donor's ability to pay debts. To similar effect, see *Effingham, supra*. Bay State's citation to *Harris v. Aimco, Inc.*, 66 Ill.App.3d 60, 383 N.E.2d 631, 633 (1978), is also misplaced. In that case there were additional factors from which fraud in fact could be inferred, in particular that after the residential property in question was conveyed to the children of the sole shareholder of the corporate donor, the shareholder continued to live in the residence. Also, the creditor in that case presented evidence of heavy indebtedness. Thus the case states, "*If an entity is insolvent*, the burden of dispelling the implication of fraud implied from a transaction to a family member, *which transaction hinders the rights of others*, is upon the debtor and donee of the property." *Id.* (emphasis added).

4. At one point *Robinson* states the burden shifts to the opposing party only after insolvency is shown. 33 N.E.2d at 736. Later in the opinion, however, it is stated the burden shifts once it is shown there was a voluntary conveyance for no consideration. *Id.* at 737.

case for proceedings consistent with the opinion of this court.