BAY STATE MILLING COMPANY,
Plaintiff–Appellee,

v.

June D. MARTIN, Defendant–
Appellant.

No. 02–2136.

United States Court of Appeals,
Seventh Circuit.

Submitted Sept. 11, 2002.*

Decided Sept. 11, 2002.

Rehearing Denied Sept. 30, 2002.

Before COFFEY, EASTERBROOK,
MANION, Circuit Judges.

**ORDER**

In 1985 Bay State Milling Company
sued William Martin, Sr., for breach of
guaranty and was awarded damages of
$447,528; Bay State has spent more than a
decade trying to collect this judgment
from Martin and his immediate family.
*See Bay State Milling Co. v. Martin,* 916
F.2d 1221, 1225 (7th Cir.1990); *Bay State
Milling Co. v. Franchi,* No. 94 C 4099,
1998 U.S. Dist. LEXIS 3605 (N.D.Ill. Mar.
20, 1998); *Bay State Milling Co. v. Martin,* 151 B.R. 154 (N.D.Ill.1992); *In re
Martin,* 145 B.R. 933 (Bankr.N.D.Ill.1992);
*In re Martin,* 124 B.R. 69 (N.D.Ill.1991).
In 1989 Martin filed for bankruptcy, and a
bankruptcy trustee was appointed; the
trustee sold the bankruptcy estate's interest in a parcel of property in Northbrook,
Illinois, to Martin's three children, William
Martin, Jr., Diana Franchi, and Betty Lou
Doty. Prior to the bankruptcy Martin and
his wife, June Martin, owned the property
as joint tenants. After the sale, each of

---

\* After an examination of the briefs and the
record, we have concluded that oral argument is unnecessary. Thus, the appeal is

submitted on the briefs and the record. *See*
Fed. R.App. P. 34(a)(2).

Martin's children held a one-sixth interest in the property, while June retained the remainder.

In 1992 Martin, still in the midst of bankruptcy proceedings, transferred a winning lottery ticket to his daughters, Franchi and Doty. Bay State brought an action against Franchi and Doty to nullify the transfer as fraudulent, and in September 1999 the district court awarded Bay State a judgment of $200,000. Shortly thereafter, Franchi filed for bankruptcy under Chapter 7, and Doty produced documentation demonstrating that she was insolvent.

While the fraudulent transfer action was pending, Franchi, Doty, and William Martin, Jr., conveyed their interest in the Northbrook, Illinois, property to June Martin for the nominal consideration of three dollars. A quitclaim deed executed by all three transferors was delivered on April 25, 1994, but not recorded until October 30, 1995. Seven weeks after the recordation, in December 1995, the property was appraised at $305,000 when June refinanced an $80,374 mortgage. In October 1999 she sold the property for $284,000. When Bay State learned that Franchi and Doty had transferred their interests in the property, the company, invoking the district court's diversity jurisdiction, brought this action against June under the Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS § 160/1 *et seq.* The court granted Bay State's motion for summary judgment, awarding a total of $98,850 in damages and prejudgment interest. June appeals, and we affirm.

On appeal June does not challenge the district court's finding that her daughters' conveyance of their interests in the property was a fraudulent transfer. Rather, she disputes the district court's calculation of the property's worth at the time of the transfer. June submits that the court should have used the date the deed was executed, not the date of recordation, to determine the value of the property. She acknowledges the $305,000 appraisal made seven weeks after the deed was recorded, but insists that this figure reflects the substantial improvements made at her own expense and not the value of the property at the time at the time the deed was executed. A fire damaged the property in November 1994, and as a result, June argues, the interests Franchi and Doty conveyed to her were of "no value" because the lot was just "a piece of land with a burnt down house on it." But the deed was executed and delivered in April 1994, seven months before the fire; the property's value in April could not have been diminished by a fire that would not take place until November.

■ More important, the relevant date here is the date of recordation, not the date of execution or delivery; for purposes of the UFTA, a transfer of real property is made "when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee." 740 ILCS § 160/7(a)(1). Under Illinois law a transferee's title to real property is protected against a bona fide purchaser only after the deed has been recorded. 765 ILCS § 5/30; *see In re Application of the Cook County Treasurer*, 185 Ill.2d 428, 235 Ill.Dec. 910, 706 N.E.2d 465, 470 (1998). Thus June's newly acquired interest was not safe from bona fide purchasers, i.e., perfected, until the deed was recorded on October 30, 1995.

Furthermore, even if June was correct that the date of execution, not recordation, was controlling, she failed to present any evidence that the property was worth less in April 1994 than it was in October 1995.

The only valuation in the district court record is the December 1995 appraisal of $305,000. June seeks to undermine this figure as not reflective of various encumbrances on the property; she says there were $275,000 in liens when she sold the property for $284,000 in 1999. What matters, however, is the value when June received the property; its value when June sold it four years later is irrelevant. June herself admitted in her deposition testimony that the only encumbrance on the property on October 25, 1999, the date of recordation, was an $80,374 mortgage, and the district court took this mortgage into account when calculating the amount due to Bay State.

June makes a final challenge to the court's determination of the property's value. She asserts in her appeal brief that the December 1995 appraisal was based on blueprints that were later used to rebuild the burned-down house and that the refinancing was actually for a "construction loan." But June never presented evidence of a construction loan in the district court, or even suggested that the appraisal was for planned construction rather than an existing structure.

■ June's remaining argument is based on 720 ILCS § 5/17–14, which provides that "a party to a fraudulent conveyance of lands … made … with intent to deceive and defraud others, or to defeat, hinder, or delay creditors or others of their just debts, damages or demands … is guilty of a business offense and shall be fined not exceeding $1,000." June interprets this provision as limiting her liability in this case to $1,000. But June is confusing a punitive measure for a remedial one. *See generally S.A. Healy Co. v. Occupational Safety and Health Review Comm'n*, 96 F.3d 906, 909–11 (7th Cir.1996) (discuss-ing the distinction between "punitive" and "remedial"). The statute that June cites is a provision of the Illinois criminal code, and the purpose of the $1,000 fine is the punishment of criminals who commit fraud. This was a civil suit, not a criminal proceeding, and Bay State sought not to punish June but to receive compensation for the loss it suffered as a result of her daughters' fraud. Because June had already sold the fraudulently conveyed property to a bona fide purchaser, Bay State could not recover the actual property. The UFTA, however, allowed Bay State to recover a portion of the proceeds equivalent to Franchi's and Doty's interests in the property at the time of transfer, *see* 740 ILCS 160/8, which far exceeded $1,000.

AFFIRMED.